WALLACE W. CARLSON COMPANY,
Relator,

v.

Mont HASLER, Respondent,

Commissioner of Economic
Security, Respondent.

No. C9–84–376.

Court of Appeals of Minnesota.

July 24, 1984.

Diane M. Carlson, Chaska, for relator.

Hubert H. Humphrey, III, Atty. Gen., Regina M. Chu, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by LANSING, P.J., FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Wallace W. Carlson Company (Carlson) contests the Commissioner of Economic Security's determination that Carlson failed to sustain its burden of proving misconduct on the part of Mont Hasler within the meaning of Minn.Stat. § 268.09 (Supp. 1983).

We affirm the Commissioner's determination.

## FACTS

Hasler was employed by Carlson as a driver. In June 1982, Hasler broke his wrist at work and was unable to return to work until March 1983. Before returning, Hasler was told by his doctor to restrict his hours to six per day and to wear a splint and a pain suppression device known as a TENS unit. In May 1983, Hasler's doctor advised him that he could return to a ten-hour day but should continue wearing his splint and TENS unit.

Because Hasler was unable to perform his former duties as a driver due to his injured wrist, he was assigned to janitorial work and to assist the bindery supervisor with various light duties. His full-time shift was from 4:00 p.m. to 3:00 a.m. four days per week. Instead of taking lunch or coffee breaks, Hasler left approximately half an hour early, the time allotted for breaks. Hasler told Carlson that he did not take breaks because he had difficulty reactivating his injured arm afterward and could work more effectively if he did not rest his arm during his shift.

On June 6, 1983, at 4:15 p.m., Hasler met with the production manager to discuss his performance. The production manager informed Hasler that he should not question his supervisor, that he should be more cooperative, and that he should take breaks at appropriate times instead of leaving early. During the discussion, Hasler concluded that he was being fired, although that was not the production manager's intent.

After the review discussion, Hasler informed his supervisor and another employee that he had been "canned" by the production manager. Hasler then wrote a note to one of the co-owners of Carlson, informing the co-owner that he had just been fired, that he did not understand why he was being terminated, and that he would call at 8:00 a.m. the next day to find out why he had been discharged. Hasler then left work at approximately 5:30 p.m.

On June 7, 1983, at 8:00 a.m., Hasler telephoned the co-owner, who informed him that he was not fired. The co-owner instructed Hasler to come to work at his usual time. However, at 10:00 a.m. that day, the co-owner and the production manager met and, at the production manager's recommendation, they decided to discharge Hasler for leaving work on June 6 without authorization.

In accordance with his conversation with the co-owner, Hasler began work at approximately 4:00 p.m. on June 7, 1983. The production manager called Hasler into his

office and asked him why he had left at 5:30 p.m. on June 6. Hasler responded that he left because he thought he had been discharged. Despite Hasler's explanation, the production manager discharged Hasler for leaving early on June 6.

Following his termination, Hasler applied for unemployment compensation benefits. A claims deputy determined that Hasler was disqualified from receiving benefits. A referee affirmed the decision.

Hasler appealed to the Commissioner. He requested and received a remand to a referee to submit additional evidence. On remand, a referee determined that Hasler had engaged in misconduct by leaving early and, accordingly, was disqualified from receiving benefits under Minn.Stat. § 268.-09, subd. 1(2) (Supp.1983).

When Hasler appealed again, the Commissioner's representative reversed the determination of the referee, finding that Carlson had failed to sustain its burden of proving Hasler's misconduct within the meaning of Minn.Stat. § 268.09, subd. 1(2), and ·Tilseth v. Midwest Lumber Company, 295 Minn. 372, 204 N.W.2d 644 (1973).

## ISSUE

Does the record support the decision of the Commissioner that Carlson failed to sustain its burden of proving that Hasler was discharged for misconduct?

## ANALYSIS

■ Findings in unemployment compensation cases must be reviewed in the light most favorable to the decision. If there is evidence reasonably tending to sustain them, they will not be disturbed. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983); *Smith v. American Indian Chem. Dependency Diversion Project*, 343 N.W.2d 43, 44 (Minn.Ct.App. 1984).

■ It is incumbent upon the employer to establish by a preponderance of the evidence that an employee is disqualified from benefits because of misconduct. *Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 209 N.W.2d 397 (1973).

■ Contrary to Carlson's assertions, the record fully supports the Commissioner's finding that Hasler left early on June 6, 1983, because he honestly believed that he had been fired by the production manager. Hasler's actions after the performance appraisal of June 6 clearly demonstrate that he held a good-faith, although mistaken, belief that he had been discharged. It is undisputed that Hasler informed another employee and his immediate supervisor after the discussion that he had been "canned" and that he called the co-owner the next morning to inquire about the reasons for his termination. The only reasonable conclusion that can be drawn from these facts is that Hasler left before the end of his scheduled shift because of his erroneous belief that he had been discharged by the production manager.

The Commissioner correctly recognized that the production manager's lack of intent to fire Hasler is immaterial. At issue in this proceeding is whether, by leaving early on June 6, Hasler intentionally and willfully disregarded the employer's interests or engaged in deliberate violations of standards of behavior which the employer had a right to expect of him within the meaning of the *Tilseth* definition of misconduct. The Commissioner correctly applied the *Tilseth* standard in this case:

> The *Tilseth* case limits misconduct to a *"willful or wanton disregard* of an employer's interests" such as *"deliberate* violations or disregard of standards of behavior which an employer has a right to expect of its employees" * * * The essence of misconduct, then, is intent or the employee's state of mind at the time of the act. Obviously, if an employee honestly believed that he had been discharged, it would not be misconduct to leave the place of employment during his shift. What else should a discharged employee do? On the other hand, it *would* be misconduct to leave without permission or authority for some other reason.

We agree with the Commissioner. Hasler's conduct in leaving the work premises on June 6 does not rise to the culpability level of a willful disregard for the employ-

er's interests. Both common sense and the record support the Commissioner's conclusion that when an employee leaves the work premises believing he has been discharged, the employee has not engaged in misconduct.

## DECISION

The order of the Commissioner of Economic Security is affirmed.