639 A.2d 1313

**GANLY'S PUB AND DELI, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 18, 1994.

Decided March 30, 1994.

J. Kitridge Fegley and Gilbert M. Mancuso, for petitioner.

James K. Bradley, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Ganly's Pub and Deli (Ganly's) appeals an order of the Unemployment Compensation Board of Review (Board) which affirmed a referee's order granting unemployment benefits to Christine Leibig under the Pennsylvania Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §§ 751–914.

The Board found the following facts. Leibig was employed by Ganly's as a general manager with a final rate of pay of $4.25 per hour plus one percent of food sales. On April 16, 1993, she informed Ganly's that she would be looking for another job due to the fact that she had to give additional care to her mother. At this time, Leibig was working extended hours seven days per week. She gave no indication of when she would be leaving.

On April 20, 1993, Leibig informed Ganly's that she had not found a job and, in fact, had not even looked. Ganly's informed her that her last day of work would be Friday, April 23, 1993. Leibig stated she needed a job and disagreed that her last day of work should be that date. The following day, Leibig reiterated that she was going to continue to work until she found other employment. On April 23, Ganly's general manager handed Leibig a letter stating she would not be

rehired. Thereafter, Leibig was no longer placed on the work schedule and had no further contact with Ganly's.

Leibig applied for unemployment benefits. Benefits were denied under Section 402(b) of the Law, 43 P.S. § 802(b), which provides that a claimant shall be ineligible for benefits for any week of unemployment due to having voluntarily terminated employment without cause of a necessitous and compelling nature. Leibig appealed to the referee. The referee reversed this determination and granted benefits. Ganly's appealed to the Board. The Board noted that the record is replete with conflicting testimony and explicitly resolved the conflicts in favor of Leibig. The Board found that Leibig did not intend to and, in fact, did not voluntarily terminate her employment, but instead was involuntarily separated as confirmed by the letter given to her on her last day of work.[1] Accordingly, the Board affirmed the referee's decision. Ganly's now appeals to this Court.

█ Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed or findings of fact were unsupported by substantial evidence. *Hercules, Inc. v. Unemployment Compensation Board of Review*, 146 Pa.Commonwealth Ct. 77, 604 A.2d 1159 (1992).

█ Ganly's argues that the Board erred in holding that Leibig was involuntarily terminated. Our resolution of this issue is essentially determinative of this appeal. Ganly's points to Leibig's testimony that "I called the meeting ... to tell him that I was going to go look for another job," "I asked them if they would lay me off ..." and "I told him I would work as long as he wanted me to work." (Notes of Testimony (N.T.), June 29, 1993, pp. 7, 13, 22). Ganly's also points to the testimony of its owner, who stated that Leibig told him "I really have to quit this job ..." and "I'd like to leave as soon as possible ..." and expressed a desire to obtain unemploy-

---

1. The Board also noted that the record is devoid of any willful misconduct or even allegations of willful misconduct and we note that the issue of willful misconduct is not argued in this appeal.

ment benefits. (N.T., June 29, 1993, pp. 18–19). Ganly's argues it restructured its scheduling due to Leibig's representations and thus this case is one of voluntary termination. *O'Connor v. Unemployment Compensation Board of Review,* 50 Pa. Commonwealth Ct. 573, 413 A.2d 458 (1980); *Lovrekovic v. Unemployment Compensation Board of Review,* 36 Pa.Commonwealth Ct. 364, 387 A.2d 685 (1978). Ganly's contends that Leibig's representations and actions were the sole cause of the work separation. *O'Connor; Lovrekovic.*

Whether an employee's conduct constitutes a voluntary termination is a question of law, the resolution of which is dependent on the facts found by the Board. *O'Connor.* The Board in this case explicitly resolved conflicts in the testimony in favor of Leibig. Credibility determinations are within the Board's exclusive prerogative. *M.A. Bruder & Sons, Inc. v. Unemployment Compensation Board of Review,* 145 Pa.Commonwealth Ct. 329, 336, 603 A.2d 271, 275 (1992). Similarly, the Board is the ultimate finder of fact; the resolution of evidentiary conflicts are for the Board and will not be disturbed by this Court on appeal. *Hercules.*

We have reviewed the record and conclude that the Board's findings of fact are supported by substantial evidence and thus are conclusive in this appeal. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).[2] Based on those findings, we agree with the Board's conclusion that Leibig was involuntarily terminated. The findings clearly show that Leibig did not quit but instead was discharged.

*O'Connor* does not compel a different result. There, the claimant was a law student employed as a communications coordinator at the Pennsylvania House of Representatives. She told her employer that she was considering a tentative job offer. Her employer's representative testified that the job offer was common knowledge and she was under the impression that the claimant would indeed be relocating to take the job. The employer's representative also testified that it was

2. The Board also argues that its findings are binding upon this Court because Ganly's has failed to specifically contest them.

normal procedure for law students to terminate their employment sometime after graduation and the claimant did not take any actions to secure continued employment. Therefore, the claimant was not considered as a candidate for continued employment after her position ran out. The claimant filed for unemployment benefits, stating that her "Job ended—there was no other place for me." We deemed the claimant's separation a voluntary termination without good cause and upheld the denial of benefits. *O'Connor.*

Here, by contrast, Leibig did take action to secure continued employment. She stated that she needed a job and disagreed that her last day of work should be April 23. She reiterated that she was going to continue to work until she found other employment. Moreover, there was no job offer in this case; instead, Leibig informed Ganly's that she had not found a job and, in fact, had not even looked. Further, while Leibig was told that she would not be "rehired," the facts do not show that, in reliance on her statements, Ganly's merely failed to consider her as a candidate for continued employment in a position that was to run out. Nor do the facts show a belief on the part of Ganly's that Leibig would be relocating.

*Lovrekovic* is also factually distinguishable. In that case, the claimant informed his employer that he was looking for work, although he did not have a definite job offer. The employer hired a replacement in reliance on the claimant's statement and the claimant helped train the replacement. When the replacement was trained and able to perform the claimant's job duties, the claimant was informed that his services were no longer necessary. We affirmed a denial of benefits, holding that "[t]he employer's act in hiring a replacement was based solely on the claimant's statement that he was looking for other work and but for this notification the replacement would never have been hired. It was this act that was therefore the proximate cause of the claimant's unemployment after ... the employer determined the replacement was sufficiently trained." *Lovrekovic,* 36 Pa.Commonwealth Ct. at 367, 387 A.2d at 686. The hiring of a replacement in that case was a precipitating event which made it accurate to say that

the claimant's statement "set off the chain of events that led to his unemployment and thus was its factual cause." *Id.*

In the case before us, there was no such precipitating event or subsequent chain of events therefrom which would render an expressed intention to seek other work the factual cause of the unemployment. In *York Tape and Label Corp. v. Unemployment Compensation Board of Review*, 62 Pa.Commonwealth Ct. 163, 435 A.2d 305 (1981), we distinguished *Lovrekovic* and other cases on this basis.[3] We held there that a claimant's statement that she was looking for another job, without more, did not constitute a voluntary termination:

> In order to have found a voluntary termination in this case, the Board would have been required to conclude as a matter of law that the claimant's mid-September conversation with the personnel director was sufficiently definite to constitute a resignation. . . . The claimant did not give a date certain on which her employment was to terminate; she did not even say that she would give notice at some future time of her intention to leave. She merely made a statement, in the context of a dispute over access to personnel files, that she was looking for another job. This could not have constituted a resignation absent some additional triggering event.

3. We noted in *York Tape*, as we have here, that the triggering event in *Lovrekovic* was the claimant's active participation in hiring and training his own replacement; we also noted that the employee in *Walker v. Unemployment Compensation Board of Review*, 27 Pa.Commonwealth Ct. 522, 367 A.2d 366 (1976) submitted a written resignation; we also recognized that in neither of those cases did the employee argue that his actions failed to constitute a resignation. *York Tape*, 62 Pa.Commonwealth Ct. at 170, n. 7, 435 A.2d at 309, n. 7. Further, the Board cites *1030 North West End Boulevard, Inc. v. Unemployment Compensation Board of Review*, 53 Pa.Commonwealth Ct. 314, 417 A.2d 294 (1980), where the triggering event was deemed to be the employee's promise to provide two-weeks notice prior to leaving. We distinguished *Lovrekovic* in that case and affirmed the grant of benefits because that triggering event never occurred prior to termination. *Id.* See also *Nissley v. Unemployment Compensation Board of Review*, 97 Pa.Commonwealth Ct. 207, 509 A.2d 893 (1986) (reversing the Board's denial of benefits where the claimant stated she would have to look for other work and termination preceded two-weeks notice). Last, it is arguably accurate to state that a triggering event occurred in *O'Connor* when the claimant failed to be considered for continued employment after her position ran out.

See *1030 North West End Boulevard, Inc.* [*v. Unemployment Compensation Board of Review,* 53 Pa.Commonwealth Ct. 314, 417 A.2d 294 (1980) ].

*York Tape,* 62 Pa.Commonwealth Ct. at 169–170, 435 A.2d at 309 (footnotes omitted).

Apart from the fact that there was no triggering event in this case, it is clear that Leibig's statements were far from sufficiently definite to constitute a resignation. In fact, her statements show that she specifically made it known that she was not terminating her employment. While Leibig stated that she would be looking for another job, her other statements as found by the Board must also be considered. Again, she told Ganly's that she had not found a job and, in fact, had not even looked. She stated that she needed a job and disagreed that her last day of work should be April 23. She reiterated that she was going to continue to work until she found other employment.

The Board specifically found that Leibig did not intend to and, in fact, did not voluntarily terminate her employment, but instead was involuntarily separated as confirmed by the letter given to her on her last day of work. There are no findings to suggest that Ganly's took any action—other than telling Leibig she would not be rehired and removing her from the work schedule—in reliance on Leibig's statement that she would be looking for other work. There is no suggestion that Leibig's services were no longer necessary and no finding that she was being replaced. In the absence of some triggering event, her statement that she would be seeking another job does not constitute a voluntary quit. *Nissley; York Tape; 1030 North West End Boulevard.*

Thus, the facts in this case are distinguishable from those in *O'Connor* and *Lovrekovic.* The facts in this case and our foregoing analysis compel the conclusion that Leibig did not voluntarily leave but instead was involuntarily terminated.

Ganly's next asserts that Leibig did not have cause of a necessitous and compelling nature for her voluntary termination. We need not consider this argument as we agree with

the Board's determination that Leibig's termination was involuntary.

Ganly's also contends that the Board erred in granting benefits based upon a theory unrelated to Leibig's original application for benefits. Ganly's points to Leibig's summary of interview form, on the back of which is a handwritten notation stating "*Concl* Clt resigned for personal reasons & not being satisfied with her job." Relying on this statement, Ganly's submits that Leibig subsequently attempted to change her reason for resignation from personal reasons such as the need to care for her mother to dissatisfaction with her manager.[4] Ganly's states that this change in theory in her reason for voluntary termination is impermissible. *Quinn, Gent, Buseck and Leemhuis, Inc. v. Unemployment Compensation Board of Review*, 147 Pa. Commonwealth Ct. 141, 606 A.2d 1300 (1992). Ganly's also reiterates that none of the reasons Leibig has stated for her desire to find new employment constitute cause of a necessitous and compelling nature to voluntarily terminate her employment. Again, however, having upheld the determination that Leibig did not resign but was involuntarily terminated, we need not consider this argument.

Accordingly, the order of the Board sustaining the referee's order is affirmed.

## ORDER

AND NOW, this 30th day of March, 1994, the order of the Unemployment Compensation Board of Review, No. B–316949, dated September 17, 1993, is hereby affirmed.

---

**4.** We do not read Ganly's argument to be that Leibig originally stated that she resigned. We do note, however, that it is for the Board, not this Court, to evaluate the statement, whomever the statement's author might be. We also note that, on the front of the form, Leibig indicated that she disagreed with the reasons given by Ganly's for her discharge. Moreover, the Board directs us to a typewritten statement from Leibig, accepted into evidence at the hearing before the referee, in which Leibig clearly states that she did not quit but instead was told she would not be rehired.