## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CC-01114-SCT

*BARBARA HUCKABEE*

*v.*

*MISSISSIPPI EMPLOYMENT SECURITY COMMISSION*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 10/04/96 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JEREMY DAVID EISLER |
| | JOHN C. JOPLING |
| ATTORNEY FOR APPELLEE: | ALBERT B. WHITE |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 4/15/1999 |
| MOTION FOR REHEARING FILED: | 10/30/98 |
| MANDATE ISSUED: | 4/22/99 |

### EN BANC.

### SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:

¶1. On October 15, 1998, we issued an opinion from which Huckabee filed the instant Motion for Rehearing. The Motion for Rehearing is hereby granted. The original opinion is withdrawn, and this opinion substituted therefor.

### STATEMENT OF THE CASE

¶2. Barbara Huckabee was employed as a cashier at Lyman's Quick-Stop (hereinafter Lyman's) for a period of sixteen months. Her employment at Lyman's ended on September 28, 1995. The following day, September 29, 1995, Huckabee filed a claim for unemployment benefits with the Mississippi Employment Security Commission. On October 12, 1995, the Claims Examiner found that Huckabee had voluntarily quit her employment, and disqualified her for unemployment benefits. Huckabee appealed the decision to the Appeals Referee whom, after a hearing, made findings of fact that Huckabee had indeed voluntarily quit her employment without good cause and was not entitled to unemployment benefits. Huckabee then appealed to the Board of Review (hereinafter "Board") which affirmed the Appeals Referee's decision. Huckabee next appealed to the Harrison County Circuit Court which found that the Board's decision was not clearly erroneous nor arbitrary and capricious and affirmed the Board's decision. Aggrieved, Huckabee appealed

to this Court raising the following issues:

**I. WHETHER THE FINDING OF THE BOARD OF REVIEW THAT HUCKABEE VOLUNTARILY LEFT WORK WITHOUT GOOD CAUSE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

**II. WHETHER AN EMPLOYEE WHO ABANDONS THE WORKPLACE UNDER THE REASONABLE BELIEF THAT HE/SHE HAS BEEN DISCHARGED IS THEREBY ELIGIBLE FOR UNEMPLOYMENT BENEFITS.**

¶3. In our original opinion, we held substantial evidence exists to support the Board's determination that Huckabee voluntarily left her employment without good cause and was, therefore, not entitled to unemployment benefits. Accordingly, we affirmed the circuit court's decision. Upon further consideration, however, we hold, as a matter of law, that an employee who leaves work under the reasonable belief that he or she has been fired has not voluntarily terminated his or her employment. Therefore, the question before this Court is whether or not Huckabee's belief that she had been discharged was reasonable given these facts.

## STATEMENT OF THE FACTS

¶4. Barbara Huckabee was employed as a cashier at Lyman's for approximately sixteen months. On September 29, 1995, Huckabee's employment ended, and she filed for unemployment benefits under Mississippi Employment Security Law. Then, on October 12, 1995, the Claims Examiner found Huckabee had voluntarily quit her employment and disqualified her for unemployment benefits. Huckabee appealed the Claims Examiner's decision to the Appeals Referee before whom a hearing was conducted on November 1, 1995.

¶5. According to Huckabee, on September 28, 1995, approximately five minutes before her shift ended, Huckabee had a discussion with the manager of Lyman's, Judy Saucier, about her employment conditions. Huckabee expressed concern to Saucier about being scheduled to work as a cook full-time which according to Huckabee was a two-person job. Saucier inquired of Huckabee if she was looking for another job, and Huckabee responded that she would be looking for another job because of the burden that had been put on her but she would continuing working as long as she possibly could. Saucier then stated that Lyman's would have to find someone else, and Huckabee assured Saucier that she would give two weeks notice if she did leave. Huckabee stated that Saucier then said something, but she was unsure exactly what was said. Huckabee then questioned Saucier if she was trying to get rid of her, and Saucier giggled, threw her hands up in the air, and stated, "I'm hiring somebody else." Huckabee interpreted Saucier's statements and conduct to mean that she had been terminated, and when she called the next morning to ask about her paycheck, she was told that she would have to talk to Saucier. Saucier told Huckabee that she would have to return her uniforms in order to receive her paycheck.

¶6. Robert Dean Hyde, President of Lyman's, testified as the employer's representative. Hyde testified that he was basically in charge of all the hiring and firing at Lyman's and that Saucier had no authority to hire and fire employees. Hyde further testified that he had no knowledge of what transpired between Huckabee and Saucier but stated that Huckabee was not under the threat of discharge at the time, and Hyde stated there was still work available for Huckabee on September 29th when she did not show up for work.

¶7. The Appeals Referee made the following findings of fact:

Claimant was employed for approximately sixteen months as a cashier for Lyman Quick Stop, Gulfport, Mississippi, ending September 28, 1995. The claimant became dissatisfied with her schedule and the work and she informed the employer that she would be seeking other employment. The employer indicated that they would be seeking a replacement for the claimant in the event the claimant left her employment. The claimant interpreted this to mean that she was discharged and the claimant did not return to work. However, the claimant was not discharged and continuing work was available for her.

The Appeals Referee, in affirming the Claims Examiner's decision, held that Huckabee was not discharged but, instead, that she left her employment voluntarily and had failed to show good cause for leaving her employment.

¶8. Huckabee appealed to the Board which adopted the Findings of Fact and Opinion of the Referee in affirming the Referee's decision. Huckabee then filed an appeal to the Harrison County Circuit Court which also affirmed the Board's decision. The circuit court judge held the Board's decision was neither clearly erroneous nor arbitrary and capricious.

## STANDARD OF REVIEW

¶9. Miss. Code Ann. § 71-5-531( Supp. 1998) governs the standard of review for appealing a Mississippi Employment Security Commission (hereinafter "MESC") Board of Review decision to the circuit court and the Mississippi Supreme Court. This Court's judicial review is limited to questions of law as provided in Miss. Code Ann. § 71-5-531 which states in pertinent part:

In any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

Miss. Code Ann. § 71-5-531 (Supp. 1998); *Hoerner Boxes, Inc. v. Mississippi Employment Sec. Comm'n*, 693 So. 2d 1343, 1346-47 (Miss. 1997); *Barnett v. Mississippi Employment Sec. Comm'n*, 583 So. 2d 193, 195 (Miss. 1991). "The Board's findings of fact are conclusive if supported by substantial evidence and without fraud." *Hoerner Boxes*, 693 So. 2d at 1347 (citing *Richardson v. Mississippi Employment Sec. Comm'n*, 593 So. 2d 31, 34 (Miss. 1992); *Ray v. Bivens*, 562 So. 2d 119, 121 (Miss. 1990); *Melody Manor, Inc. v. McLeod*, 511 So. 2d 1383, 1385 (Miss. 1987)).

## DISCUSSION OF THE LAW

**I. WHETHER THE FINDING OF THE BOARD OF REVIEW THAT HUCKABEE VOLUNTARILY LEFT WORK WITHOUT GOOD CAUSE IS SUPPORTED BY SUBSTANTIAL EVIDENCE.**

**II. WHETHER AN EMPLOYEE WHO ABANDONS THE WORKPLACE UNDER THE REASONABLE BELIEF THAT HE/SHE HAS BEEN DISCHARGED IS THEREBY ELIGIBLE FOR UNEMPLOYMENT BENEFITS.**

¶10. Huckabee contends the Board's finding that she voluntarily left work without good cause is not supported by substantial evidence. Huckabee explains she did not return to work at Lyman's because she reasonably believed she had been discharged. The issue before this Court is whether an employee who abandons the workplace under the reasonable belief that she has been discharged should be classified as a "discharged" employee and eligible for benefits or classified as a "voluntary quit" employee and not eligible for benefits.

¶11. Huckabee urges this Court to adopt the rule that when the employer, through words or conduct, causes an employee to leave work under a belief that he or she has been discharged the employee will not be held to have voluntarily left employment and will remain eligible for unemployment benefits. The MESC, however, contends the question of whether a voluntary quit or discharge took place is a question of fact, the Board's findings are supported by substantial evidence, and consequently, the Board's decision should be affirmed. The MESC further asserts the Board is not bound by either the employer's or the employee's belief as to whether a discharge or voluntary quit occurred.

¶12. Miss. Code Ann. § 71-5-513 A (1)(a) provides in pertinent part: "An individual shall be disqualified for [unemployment] benefits [f]or the week . . . on which he left work voluntarily without good cause, if so found by the commission . . . ." Miss. Code Ann. § 71-5-513 A (1)(a) (1995). However, a "discharged employee need only show that he has been paid wages during a base period for insured work, is unemployed and registered for work and 'is able to work and is available for work' in order to establish entitlement to state unemployment benefits." *Coleman v. Mississippi Employment Sec. Comm'n*, 662 So. 2d 626, 627-28 (Miss. 1995) (quoting *Mississippi Employment Sec. Comm'n v. Gaines*, 580 So. 2d 1230, 1233 (Miss. 1991)); *see also* Miss. Code Ann. § 71-5-511 (Rev. 1995).

¶13. "The principle is well settled that an Order of the Board of Review on the facts is conclusive on the lower court, if supported by substantial evidence and if absent fraud.'" *Richardson*, 593 So. 2d at 34 (quoting *Ray*, 562 So. 2d at 121 (quoting *McLeod*, 511 So. 2d at 1385)). "Where there is the required substantial evidence, this [C]ourt has no authority to reverse the circuit court's affirmance of the decision of the Board of Review." *Id.* (citing *Ray*, 562 So. 2d at 121; *Piggly Wiggly v. Mississippi Employment Sec. Comm'n*, 465 So. 2d 1062, 1065 (Miss. 1985); *Wheeler v. Arriola*, 408 So. 2d 1381, 1384 (Miss. 1982)).

¶14. This Court has held on numerous occasions that the question of whether an employee voluntarily quits or was discharged is a question of fact for the MESC to determine. *See Mississippi Employment Sec. Comm'n v. Georgia-Pacific Corp.*, 394 So. 2d 299, 303 (Miss. 1981) (holding the circuit court erred by holding "MESC did not have the right to decide whether the claimants were voluntarily or involuntarily unemployed"); *Mississippi Employment Sec. Comm'n v. Fortenberry*, 193 So. 2d 142, 143 (Miss. 1966) (holding there was sufficient evidence to support MESC's finding of fact that the claimant voluntarily severed connection with her employment); *Mississippi Employment Sec. Comm'n v. Rakestraw*, 254 Miss. 56, 60, 179 So. 2d 830, 831 (1965) (finding ample evidence to support factual finding of Board that claimant voluntarily quit suitable employment without good cause and was not discharged); *Mississippi Employment Sec. Comm'n v. Corley*, 246 Miss. 43, 45- 46, 148 So. 2d 715, 716 (1963) (holding this Court is bound by the Board's finding of fact that claimant voluntarily quit her employment where finding of fact is amply supported by evidence). Accordingly, in the case *sub judice*, this Court is bound by the Board's finding of fact that Huckabee voluntarily quit her employment without good cause as long as such finding is supported by substantial evidence. *See, e.g.*, *Richardson*, 593 So. 2d at 34; *Piggly Wiggly*,

465 So. 2d at 1065; *Wheeler*, 408 So. 2d at 1384.

¶15. We find the Board's finding of fact that Huckabee voluntarily quit her employment without good cause (i.e., was not discharged) is not supported by substantial evidence. In the case *sub judice,* the Appeals Referee found as a matter of fact that Huckabee informed her employer that she would be seeking other employment, and her supervisor indicated that she would be seeking a replacement for Huckabee in the event Huckabee left. The Appeals Referee further found as matter of fact that Huckabee interpreted her employer's comments to mean that she was discharged and, therefore, Huckabee did not return to work.

¶16. The fact that Huckabee indicated to her employer that she would be seeking other employment does not defeat her claim that she was terminated. Other courts considering this issue have held that a statement regarding a job search or even a statement of future resignation does not defeat a claim of termination. *Ganly's Pub v. Unemployment Compensation*, 639 A.2d 1313, 1316 (Pa. Cmwlth. Ct. 1994) ("In the absence of some triggering event, her statement that she would be seeking another job does not constitute a voluntary quit"); *Chapman v. Fla. Dept. of Labor & Emp. Sec.*, 415 So. 2d 820, 821 (Fla. Ct. App. 1982) ("[Claimaint] replied that he would leave his job eventually but would remain as long as the employer wanted. The employer then stated that there was no need for him to wait until a replacement could be hired and advised him to immediately leave the job. In our view, the employer's action amounted to a discharge; [claimant's] departure cannot be characterized as voluntary") .

¶17. In the case at bar, Huckabee testified she informed her supervisor that she would have to find another job if her working conditions did not improve but assured her supervisor that she would stay as long as she possibly could. Huckabee claims Saucier then stated that Lyman's would have to find someone else and Huckabee assured Saucier that she would give two weeks notice if she did leave. When Huckabee asked Saucier if she was trying to get rid of her, Saucier giggled, threw her hands up in the air, and stated, "I'm hiring somebody else."

¶18. Huckabee argues that after her conversation with Saucier it was reasonable for her to believe she had been terminated; and therefore, she should be eligible for unemployment benefits. In support of her argument, Huckabee cites to the following cases decided by other jurisdictions: *Shaw v. Hansa Mold Tool & Die, Inc.*, 592 So. 2d 1228 (Fla. Dist. Ct. App. 1992); *County Market v. Dahlen*, 396 N.W.2d 81 (Minn. Ct. App. 1986); *Midland Elec. Inc. v. Johnson*, 372 N.W.2d 810 (Minn. Ct. App. 1985); *Wallace W. Carlson Co. v. Hasler*, 351 N.W.2d 688 (Minn. Ct. App. 1984); *White v. Unemployment Compensation Bd. of Review*, 188 A.2d 759 (Pa. Super. Ct. 1963).

¶19. In *Shaw v. Hansa Mold Tool & Die, Inc.*, Shaw collected his tools and departed from his employment after his employer told him to "get out," and in response to Shaw's inquiry whether he was being fired, the employer stated "that he was not firing [him] but that he was reducing Shaw's wages." 592 So. 2d at 1229. The court held there was substantial, competent evidence in the record to support the appeals referee's finding that Shaw had been discharged since Shaw testified that he believed he had been terminated. *Id.*

¶20. In *County Market v. Dahlen*, Dahlen, after missing three days of work in a row due to illness, reported to work and was told by the bakery manager "not to bother punching in," and when Dahlen asked why, the bakery manager responded: "That's pretty obvious, you've missed too many days." 396 N.W. 2d at 82. The Minnesota Court of Appeals affirmed the Commissioner's decision that Dahlen was entitled to receive unemployment compensation benefits because he did not quit but rather left County Market

because of an honest belief that he had been discharged. *Id*. at 83; *see also* **Midland Elec., Inc. v. Johnson**, 372 N.W.2d at 811-12 (affirming the Commissioner's decision to award unemployment benefits to Johnson who reasonably believed he had been discharged after his employer asked him to turn in his tools, could not guarantee work when he returned from an upcoming trip, and walked away when Johnson asked if he should call when he got back); **Wallace W. Carlson Co. v. Hasler**, 351 N.W.2d at 690-91(affirming the Commisioner's award of unemployment benefits where the employee had a good-faith belief he had been discharged after a conversation with the production manager in which the production manager told him he should not question his supervisor, should be more cooperative, and should take breaks at appropriate times instead of leaving early).

¶21. In **White v. Unemployment Compensation Board of Review**, White left her employment after being told by her employer, "I am the boss and she is the boss (employer's wife)--If you don't like it, there is the door." 188 A.2d at, 760. The court affirmed the Board's award of unemployment benefits to White and held the Board's inference that the language "there's the door" amounted to a discharge was reasonable and logical. *Id.*

¶22. The proper question for this Court's consideration, then is whether it was reasonable for Huckabee to interpret her supervisor's statement "I'm hiring someone else" to mean her employment had been terminated. The reasonableness of an employee's belief that she has been discharged turns on the surrounding facts and circumstances. The statement "I'm hiring somebody else" is language a reasonable person would interpret as a discharge. Accordingly, we find Huckabee's belief that she had been terminated was, in fact, reasonable.

¶23. In his dissenting opinion, Justice Smith takes issue with our opinion that it was reasonable for Huckabee to believe that she had been terminated, and he states she should not be eligible for unemployment benefits based on the theory of constructive discharge. According to Justice Smith, the facts in the case *sub judice* do not reach the level of a constructive discharge as defined by this Court in **Hoerner Boxes Inc. v. Mississippi Employment Sec. Comm'n.**, 693 So. 2d 1343. However, in her Motion for Rehearing, Huckabee explains that she regrets using the term "constructive discharge" in the brief she filed with this Court because use of the term has confused the issue presented by this appeal. Subsequent to Huckabee filing her brief, this Court rendered its opinion in **Hoerner Boxes** which discussed "constructive discharge" in the context of intolerable work conditions. Huckabee does not contend that intolerable work conditions created good cause for her to leave her employment. Rather, Huckabee contends that, as the Appeals Referee found, she left work believing her employment had been terminated. Therefore, we are of the opinion this Court's analysis in **Hoerner Boxes** in not germane to the instant case.

¶24. Also, Justice Smith claims the present case is analogous to **Mississippi Employment Sec. Comm'n v. Fortenberry**, 193 So. 2d 142 (Miss. 1966). We disagree. There is no suggestion in the record that Huckabee committed acts of flagrant disrespect as did the claimant in **Fortenberry**. Huckabee did not "demand" her pay before leaving the workplace, as did the claimant in **Fortenberry**. More importantly, the claimant in **Fortenberry** did not claim to be acting out of a reasonable belief that she had been discharged.

## **CONCLUSION**

¶25. After careful review of the record and testimony, we find the evidence does not support the Board's determination that Huckabee voluntarily left her employment without good cause. We hold, as a matter of law, that an employee who leaves work under the belief that she has been fired has not voluntarily terminated her employment where that belief is reasonable under the circumstances. We find Huckabee's

belief that she had been discharged was reasonable given these facts and circumstances. Accordingly, we reverse the judgment of the circuit court and remand to the lower court for a determination as to the amount of compensation owed Huckabee, and further proceedings consistent with this opinion.

¶26. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS AND McRAE, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MILLS AND WALLER, JJ. COBB, J., NOT PARTICIPATING.**

**SMITH, JUSTICE, DISSENTING:**

¶27. Originally, this Court found the Board's finding of fact that Huckabee voluntarily quit her employment without good cause and was not discharged was supported by substantial evidence. ***Huckabee v. Miss. Empl. Sec. Comm'n.***, No. 96-CC-01114-SCT (October 15, 1998). On Motion for Rehearing however, a new majority of this Court has decided that the Board's finding of fact is unsupported by substantial evidence. Maj. Op. at 8. As the facts have remained the same, I must adhere to our original and accordingly dissent.

¶28. In the case sub judice, Huckabee was told by Saucier that she was hiring someone else only after Huckabee informed her that she was looking for other employment. Then, the day after Huckabee's and Saucier's altercation, Huckabee, instead of showing up for work as scheduled, called Lyman's and asked for her paycheck before it was due whereby she was told by Saucier that she would have to first turn in her uniforms before receiving her paycheck. At the hearing before the Appeals Referee, Hyde stated Saucier did not have the authority to relieve anyone of their duties, that Huckabee was not under the threat of discharge for any reason, and that work was still available for her at the time of separation. The Appeals Referee found that "the claimant voluntarily left her employment." Thus, I must adhere to our original view that there is substantial evidence in the record to support the Board's decision that Huckabee voluntarily quit her employment without good cause and is not eligible for unemployment benefits.

¶29. As Huckabee contends, the new Majority finds that it was reasonable for her to believe that after her conversation with Saucier that she had been terminated and should be eligible for unemployment benefits based on the theory of constructive discharge. Maj. Op. at 11. The new Majority relies upon the following cases decided by other jurisdictions: ***Shaw v. Hansa Mold Tool & Die, Inc.***, 592 So. 2d 1228 (Fla. Dist. Ct. App. 1992); ***County Market v. Dahlen***, 396 N.W.2d 81 (Minn. Ct. App. 1986); ***Midland Elec. Inc. v. Johnson***, 372 N.W.2d 810 (Minn. Ct. App. 1985); ***Wallace W. Carlson Co. v. Hasler***, 351 N.W.2d 688 (Minn. Ct. App.1984); ***White v. Unemployment Compensation Bd. of Review***, 188 A.2d 759 (Pa. Sup. Ct. 1963).

¶30. This Court, however, has addressed before the issue of constructive discharge in an unemployment compensation context. *Hoerner Boxes, Inc. v. Mississippi Employment Sec. Comm'n*, 693 So. 2d

1343, 1347 (Miss. 1997). The *Hoerner Boxes* Court stated that "constructive discharge results when the employer has made conditions so intolerable that the employee feels compelled to resign." *Hoerner Boxes, 693 So. 2d at 1347* (citing *Bulloch v. City of Pascagoula*, 574 So. 2d 637, 640 (Miss. 1990) (citing *Shawgo v. Spradlin*, 701 F.2d 470, 481 (5th Cir. 1983))). In *Hoerner Boxes*, the employee claimed that she voluntarily left her employment with good cause as a result of the hostile environment created by a continued practice of sexual harassment by other employees, and the Appeals Referee and Board of Review concluded that the workplace environment was hostile as a result of sexual harassment and awarded the employee unemployment benefits as having shown good cause for voluntarily leaving her employment. *Id.* The employer, however, on appeal argued that the employee's departure was not tantamount to a constructive discharge because the employee participated in the sexual harassment and welcomed the creation of the hostile environment. *Id.* This Court, however, affirmed the Board's decision awarding unemployment benefits to the employee and held that sexual harassment in the workplace constituted good cause for voluntarily leaving employment. *Id.* at 1348.

¶31. However, I adhere to the position that the facts in the case sub judice do not reach the level of a constructive discharge as defined by this Court in *Hoerner Boxes*. There is no evidence in the record that Huckabee's employer made her working environment conditions so intolerable that she felt compelled to resign. *See id.* at 1347. Moreover, regardless of the Majority's contention that Huckabee regrets citing *Hoerner Boxes*, she did in fact cite the case as authority for her position. Her regret is of no consequence.

¶32. The Majority curiously remarks that "the Appeals Referee found, she left work believing her employment had been terminated." Maj. Op. at 12. To clarify, the Appeals Referee found that Huckabee had unreasonably interpreted a remark by her employer to mean she was discharged, and the Referee specifically found that Huckabee had voluntarily quit her employment.

¶33. Furthermore, I remain steadfast that the case sub judice is analogous to *Mississippi Employment Security Commission v. Fortenberry*, 193 So.2d 142 (Miss. 1966). In *Fortenberry*, a supervisor reprimanded one of the sewing machine operators in which the supervisor shook her finger at the operator and said: "That machine will sew." *Fortenberry*, 193 So. 2d at 143. During the lunch hour, Fortenberry shook her finger at the same operator and told her, "Get to your machine and go to work." *Id.* The supervisor then approached Fortenberry and stated that it was not nice to mock her during the lunch hour. *Id.* Fortenberry responded that she did not think it was nice for the supervisor to talk to the operator the way she did. *Id.* Fortenberry called the supervisor again and stated the same, and the supervisor told Fortenberry that the matter was of no concern to her and that her job was to sew. *Id.* Fortenberry responded that she "was ready to get in it." *Fortenberry*, 193 So. 2d at 143. The supervisor then reported the incident to the forelady who arranged a meeting with the plant manager and Fortenberry. *Id.* Fortenberry denied that she was mocking the supervisor but was advised that she would be required to apologize to the supervisor, and she refused to do so. *Id.* The plant manager told the supervisor and Fortenberry "to go home, cool off, and come back the next morning." *Id.* Fortenberry stated that she would not come back the next morning to be fired and that if she was to be fired then it would have to be then whereupon she demanded her pay and left. *Id.* Fortenberry came back late the next day but did not go back to work because she was required to apologize to the supervisor. *Fortenberry*, 193 So. 2d at 143.

¶34. Fortenberry filed for unemployment benefits, and the Referee rejected the claim because Fortenberry was discharged because of misconduct during work hours. *Id.* Fortenberry appealed the Referee's decision, and the Board of Review decided that Fortenberry "was not entitled to receive under the

provisions of the Mississippi Employment Security Law for the reason that the claimant 'did voluntarily leave her employment for she demanded her check before it was due and failed to return to work . . . .'" *Id.* This Court held that there was substantial evidence to support the Board's decision that Fortenberry left her employment and "voluntarily demanded and received her compensation before it was due, and did not return to her employment for reasons of her own." *Id.* at 144.

¶35. Analogously, in the case sub judice, Huckabee was told by Saucier that she was hiring someone else **in the event** Huckabee informed her that she would be leaving. After the conversation, Huckabee did not report to work the next day, but instead, Huckabee called Lyman's and requested her paycheck at which time she was instructed by Saucier that she would have to turn in her uniforms before she could receive her paycheck. Furthermore, at the hearing before the Appeals Referee, Hyde stated Saucier did not have the authority to relieve anyone of their duties, that Huckabee was not under the threat of discharge for any reason, and that work was still available for her at the time of separation. Thus, in my view, the instant case is analogous to *Fortenberry* in that Huckabee "voluntarily demanded and received her compensation before it was due, and did not return to her employment for reasons of her own." *See Fortenberry*, 193 So. 2d at 144.

¶36. Since this Court is bound by the Board's findings of fact unless there is no substantial evidence to support the findings of fact or fraud exists, I would accordingly affirm because substantial evidence exists to support the Board's determination that Huckabee voluntarily left her employment without good cause and was, therefore, not entitled to unemployment benefits.

¶37. I respectfully dissent.

**MILLS AND WALLER, JJ., JOIN THIS OPINION.**