909 So.2d 115 (2005)
Lynn LAFOE, Appellant
v.
MISSISSIPPI EMPLOYMENT SECURITY COMMISSION, Appellee.
No. 2004-CC-00089-COA.
Court of Appeals of Mississippi.
August 16, 2005.
*116 G. Kenner Ellis, Jr., Greenville, attorney for appellant.
B. Ray Therrell, II, Jackson, attorney for appellee.
*117 Before BRIDGES, P.J., GRIFFIS and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. Lynn LaFoe appeals the decision of the Mississippi Employment Security Commission (MESC) denying her unemployment benefits. On appeal, she asserts the following errors: (1) the finding of the Board of Review that she voluntarily left work without good cause is not supported by substantial evidence, (2) her refusal to cover the assignment does not constitute "misconduct," and (3) she was denied due process of law. We find no error and affirm.

FACTS
¶ 2. Lynn LaFoe was employed with The Delta Democrat Times (DDT) newspaper in Greenville, Mississippi, from May 3, 1990, until March 12, 2003, last working as a features editor. Prior to March 12, 2003, LaFoe was given the assignment of covering the arrival of the American Queen Riverboat. The arrival date was scheduled for March 12, 2003. LaFoe delegated this assignment to another reporter whom she supervised. However, the other reporter was unable to complete the assignment due to illness. As a result, LaFoe delegated the assignment to another employee who was a photographer, not a reporter. LaFoe sent a memorandum to the editor, Donald V. Adderton, informing him that the photographer would be covering the story. Adderton subsequently informed LaFoe that he did not want the photographer to cover the story, but wanted her to do it. On March 12, 2003, during a meeting with Adderton, LaFoe was again asked to cover the story. LaFoe explained that she was unable to cover the story due to her current work load and family obligations. Adderton then stated that LaFoe could either do the assignment or turn in her resignation. In response, LaFoe stated, "You got it" and left the office. LaFoe subsequently cleaned out her desk and left the DDT.
¶ 3. LaFoe filed for unemployment benefits. The appeals referee denied the claim and determined that LaFoe voluntarily left her employment at the DDT without good cause. The Board of Review affirmed the decision of the appeals referee. LaFoe then appealed to the Circuit Court of Washington County, which affirmed the Board of Review's decision. LaFoe now appeals to this Court.

STANDARD OF REVIEW
¶ 4. The findings of the Board of Review as to the facts is conclusive on the appeals court, if supported by substantial evidence and absent fraud. Richardson v. Mississippi Empl. Sec. Comm'n, 593 So.2d 31, 34 (Miss.1992). Where there is the required substantial evidence and absent fraud, this Court has no authority to reverse the circuit court's affirmance of the decision of the Board of Review. Id.

ANALYSIS

I. Is the finding of the Board of Review that LaFoe voluntarily left work without good cause supported by substantial evidence?
¶ 5. LaFoe contends that the Board of Review's finding that she voluntarily left work without good cause is not supported by substantial evidence. LaFoe argues that she did not voluntarily quit but was discharged. The question of whether an employee voluntarily quits or was discharged is a question of fact for the MESC to determine. Mississippi Empl. Sec. Comm'n v. Corley, 246 Miss. 43, 46, 148 So.2d 715, 716 (1963). Accordingly, this Court is bound by the Board of Review's finding of fact that LaFoe voluntarily quit her employment without good cause as *118 long as such finding is supported by substantial evidence, absent fraud and the correct legal standard has been applied.
¶ 6. After LaFoe refused to cover the assignment, Adderton asked for her resignation. In response, LaFoe stated, "You got it." LaFoe admits she responded this way but argues that it was out of stress and frustration. She claims that Adderton's ultimatum left her with no other choice but to leave her employment since there was no way she could cover the assignment due to her current work load and family obligations.[1] In order for a constructive discharge to have occurred the employer must have made conditions so unbearable that in turn the employee reasonably feels compelled to resign. Hoerner Boxes, Inc. v. Mississippi Empl. Sec. Comm'n, 693 So.2d 1343, 1347 (Miss. 1997). The facts in the case sub judice do not reach the level of a constructive discharge as defined in Hoerner Boxes. There is no evidence in the record that LaFoe's employer made her working conditions so intolerable that she felt compelled to resign.
¶ 7. In Mississippi Empl. Sec. Comm'n v. Fortenberry, 193 So.2d 142, 144 (Miss. 1967), the court stated,
The eligibility and disqualification provisions set out in the Mississippi Employment Security Law clearly indicate that this law is for the protection of persons who are part of the force of working employees who are ready, willing and able to perform their work, but who, through no fault of theirs, are not permitted to do so, and the law is not to be used to reward those who, for reasons of their own, refuse to work at suitable employment.
Mississippi Code Annotated Section 71-5-511 (Rev.2000) states that eligibility for unemployment benefits requires that the claimant prove she is available for work. "Availability" is interpreted to mean readiness and willingness to accept any suitable work. Mississippi Empl. Sec. Comm'n v. McLeod, 419 So.2d 207, 208 (Miss.1982).
¶ 8. Following the meeting with Adderton, LaFoe immediately cleaned out her desk and left the building. The fact that LaFoe cleaned out her desk and left implies that she did not intend to return to her employment or be available for work. In Mississippi Empl. Sec. Comm'n v. Rakestraw, 254 Miss. 56, 61, 179 So.2d 830, 831 (1965), the appellee quit her job following a brief misunderstanding with the plant manager, at a time when she was being asked by him to return to work. The court stated, "[t]he Board of Review was correct in its conclusion that this disqualified her . . . to receive unemployment compensation benefits." Id. Like the claimant in Rakestraw, work was available to LaFoe had she carried out the assignment. Adderton, the DDT's editor, testified that if LaFoe had accepted and completed the assignment she would still be working at DDT.
¶ 9. Mississippi Code Annotated Section 71-5-513 (Rev.2000) provides for disqualifying persons from benefits otherwise eligible for such acts as leaving work voluntarily without good cause. LaFoe claims that she was unable to cover the assignment due to her current workload as well as family obligations. However, quitting work due to marital, filial, and domestic circumstances and obligations are not good cause. See Miss.Code Ann. § 71-5-513 (Rev.2000).
*119 ¶ 10. The record indicates that LaFoe was never told she was discharged. A claimant's belief she was discharged must be reasonable and based on the surrounding facts and circumstances. Huckabee v. Mississippi Empl. Sec. Comm'n, 735 So.2d 390, 396(¶ 22) (Miss.1999). LaFoe's belief she was discharged is not reasonable since Adderton never mentioned termination nor did LaFoe receive any documentation which stated or implied she was terminated.
¶ 11. Perhaps the most convincing evidence that LaFoe voluntarily resigned came from a fellow employee at the DDT. An employee at the DDT testified that following the incident with Adderton, LaFoe cleaned out her desk. When asked if LaFoe told her what happened, the a co-worker stated, "[LaFoe] said that she was asked a few times to cover the story and she said she couldn't cover it and then she said that she was asked for, to cover the story or for her resignation and she said she gave her resignation. And she said that she, it was better off that way, because she just couldn't deal with the things anymore." (emphasis added).
¶ 12. Upon review, we find there was substantial evidence to support the Board of Review's finding that LaFoe voluntarily quit her employment at the DDT without good cause. Thus, we find no error.

II. Does LaFoe's refusal to cover the assignment constitute "misconduct"?
¶ 13. LaFoe argues that according to the DDT's employee manual, she should have been disciplined, not discharged for refusing to cover the assignment. She further argues that her refusal to cover the story did not constitute "misconduct" under Wheeler v. Arriola, 408 So.2d 1381 (Miss.1982). Since we have already determined that LaFoe voluntarily quit her job at the DDT and was therefore not discharged, this issue is moot.

III. Was LaFoe denied due process of law?
¶ 14. At the initial hearing before the appeals referee, both LaFoe and Adderton testified. At the conclusion of the hearing, the DDT moved for a continuance in order to allow its publisher to testify. The appeals referee granted the DDT's continuance. However, at the second hearing the publisher did not appear. When the publisher failed to appear at the second hearing, the appeals referee asked Adderton additional questions regarding the events which gave rise to the hearing.
¶ 15. LaFoe claims she was not given notice that Adderton would be allowed to supplement his testimony. LaFoe further asserts that the appeals referee erred in finding many of her counsel's questions irrelevant. Due to the lack of notice regarding Adderton's supplemental testimony and the relevancy rulings by the appeals referee, LaFoe argues that she was denied due process of law.
¶ 16. There is nothing in the record that indicates LaFoe raised this issue in the lower court. Issues not raised in the lower court cannot be raised for the first time on appeal. Davis v. State, 684 So.2d 643, 658 (Miss.1996). Furthermore, an appeals referee is given discretion in how the hearings are conducted. If any problems occurred during the hearing, the Board of Review had every opportunity to review and correct the matter. Nothing in the record nor the Board of Review's decision leads us to believe the appeals referee erred. Therefore, we find this issue is without merit.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY IS AFFIRMED.
*120 KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Although LaFoe does not argue constructive discharge in her brief to this Court, we feel it is necessary to discuss the issue.