DICKINSON, Presiding Justice,
for the Court:
¶ 1. After determining that Devin Jones voluntarily quit his job without good cause, the Mississippi Department of Employment Security (MDES) denied his application for unemployment benefits. Because the Administrative Law Judge (ALJ) relied solely on an inapplicable provision from the employee handbook in concluding that Jones had voluntarily quit his job, we reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2. Jones worked for T & L Specialty Company (“T & L”) as a product technician beginning on June 18, 2012, and ending on February 4, 2013. On February 4, 2013, Jones timely reported to work at 7:00 p.m. and performed his assigned duties until his first break at 9:00 p.m. While on his break, Jones learned that his fiancé was having complications related to her pregnancy, so he left work early. He did not notify his supervisor, Mitch Monts, that he was leaving, but he did ask his coworker, Demetrius Tatum, to tell Monts that he was leaving and why. Tatum, however, failed to relay this message, and so Monts did not learn of the emergency.
¶3. Pursuant to a policy in T & L’s employee handbook, Monts concluded that — by leaving work early without informing him within eight hours — Jones had “voluntarily quit” his job. He immediately hired a replacement for Jones. Unaware that Monts deemed him to have quit voluntarily, Jones returned to work the following day. Jones pleaded with Monts, and then with Karen Hodum from T & L’s Human Resources department, insisting that he had not intended to quit his job and maintaining that he believed that, by leaving work early, he would only receive a half-point on his record.
¶ 4. Jones’s pleas with T & L representatives proved unsuccessful and so he filed a claim for unemployment benefits. Initially, a claims examiner concluded that Jones was ineligible to receive benefits because he had committed misconduct. Jones appealed this decision to the ALJ. After conducting a telephonic hearing, the ALJ issued a decision declaring Jones ineligible to receive unemployment benefits on the basis of “constructively voluntarily quitting” his employment without good cause.
¶ 5. After the ALJ issued her decision, Jones appealed to the Board of Review, but, due to a “technical glitch,” the Board was under the impression that the ALJ had dismissed Jones’s claim for nonpartici-pation and accordingly affirmed. Jones then appealed the Board’s decision to the Circuit Court of Lee County. During the appeal process, MDES realized its mistake and requested that the circuit court remand the case to the Board to consider the case on the merits, and the case subsequently was remanded to the Board.
*1003 ¶ 6. Once the circuit court had remanded this case to the Board, the Board issued an order remanding the case to the ALJ for further hearing and a decision on the merits. Following a fairly confusing sequence of events, the Board rendered a decision stating that “after careful review and consideration,” it would adopt the findings of fact and opinion of the ALJ and thereby affirmed the decision.
¶ 7. Jones once again appealed the Board’s decision to the Lee County Circuit Court, and the circuit court affirmed the Board’s decision, stating that “the decision of the Board of Review of the Mississippi Department of Employment Security was supported by substantial evidence, was not arbitrary, and contains no errors of law, and that the same should be AFFIRMED.” Jones timely filed his Notice of Appeal to this Court, asserting the following issues:
I. Whether the circuit court erred in affirming the decision of the Board of Review and the ALJ that Jones was not entitled to receive unemployment benefits due to his having “constructively voluntarily quit” his employment.
II. Whether the circuit court erred in finding that the actions of the Board of Review after remand were not arbitrary and capricious.
III. Whether there was substantial evidence that Jones committed misconduct within the meaning of the unemployment law, and thus was ineligible to receive benefits.
¶ 8. Finding the first issue to be disposi-tive, we decline to address the remaining issues.
STANDARD OF REVIEW
¶ 9. This Court will not disturb an administrative agency’s decision unless it is 1) not supported by substantial evidence, 2) is arbitrary and/or capricious, 3) beyond the scope or power granted to the agency, or 4) violated one’s constitutional rights.[1] Our standard of review, therefore, is very restricted and, consequently, “an order from a Board of Review of the Employment Security Commission on the facts is conclusive ... if supported by substantial evidence” absent a finding a fraud.[2]
ANALYSIS
Whether the Circuit Court erred in affirming the decision of the Board of Review and the Administrative Law Judge that Jones was not entitled to receive unemployment benefits due to his having “constructively voluntarily quit” his employment.
¶ 10. Pursuant to Mississippi unemployment law, an individual is disqualified from receiving unemployment benefits if he “left work voluntarily without good cause....”[3] Whether a claimant “voluntarily quit” is a question of fact to be determined by the ALJ and Board of Review,[4] but MDES is not afforded unbridled discretion in making decisions to award or deny benefits. Its decisions- must be based on substantial evidence.[5]
*1004 ¶ 11. In concluding. that Jones voluntarily had quit his job, the ALJ, relied solely on the following provision contained within T & L’s employee handbook, and then applied this provision to determine that Jones voluntarily had quit his job:
It is the employee’s responsibility to notify their supervisor if the employee will be Iqte or absent for any reason by 8 a.m. If an employee does not contact the supervisor or another company representative within 8 hrs. of an absence, the company will consider that the employee has voluntarily quit and termination will take place.
¶ 12. The ALJ ignored relevant language which preceded the paragraph quoted above. Specifically, the employee handbook also stated the following:

Absentee “Points System” for employees:

Points are assigned for absences of any kind as described below (other than authorized time off with pay or authorized time off without pay, as described later in this policy). Each employee begins with zero points, and points assigned remain on record for 12 consecutive months.
Tardy = ½ point
Leave early ' = ½ point
Reported absence = 1 point
¶ 13. Thus, the handbook clearly distinguishes between being late (or tardy), leaving early, and being absent. By the very ternas of the employee handbook— upon which the ALJ relied — Jones was required to notify his employer only if he was going to be late or absent Further, under the terms of the policy, an employee was deemed to'have'“voluhtarily quit”'only if he failed to notify the employer within eight hours of being absent. The eight-hour-notification requirement did not apply to “leave early.” The only provision relevant on these facts provides that “leaving early” merely results in a half-point assignment to Jones’s record.
¶ 14. While we find the handbook language to be clear, the dissent says:
[Biased on the plain language of these provisions, an employee who leaves work early clearly is considered absent ..'. [and] see[s] no difference between an employee who fails to report to work ... and an employee who reports to work but then leaves.
¶ 15. Respectfully, we find nothing in the handbook’s language that supports this proposition. To the contrary, the handbook sets out a clear distinction between the terms “tardy,” “leave early,” and “absence.” As further support, we note that there would be no need for the distinction if, as the dissent has concluded, they all mean the same thing.
¶.16. The dissent also makes much of the fact that, at the telephonic hearing held by the ALJ, the T & L representatives maintained that they believed “leave early” and “absent” to be “one and the same for purposes of its attendance policy.” Even if this is true, it matters not what these T & L employees believed these words to mean, because the plain language of the policy directly contradicts any such notion that the two terms mean the same thing.
¶ 17. Finally, the dissent asserts that Jones bore the burden of proof to establish that he had good cause for leaving work. We agree. But the error we find is not the weight of the evidence, but rather the ALJ’s incorrect determination that Jones “voluntarily quit” his job. On remand, *1005 Jones certainly will have the burden of proving that he had good cause for leaving work early.
¶ 18. Within the “findings of fact” portion of her decision, the ALJ — relying' on her incorrect interpretation of the handbook provision' — found the following:
The claimant constructively quit on February 5, 2013, when he left work during a break and did not return or notify the employer. The employer policy requires employees to notify their supervisor if absent, tardy, or leave work early. If a person leaves work without notifying the supervisor and makes no attempt to call for eight (8) hours, the employer considers the employee to have quit.
¶ 19. Nowhere does the ALJ conclude that Jones was being untruthful about his reason for leaving work early, ñor is there any indication that the ALJ considered Jones’s fiancee’s pregnancy complications to be less than good cause. Thus, the dissent’s concern for the burden of proof is unfounded.
¶ 20. On the day in question, Jones was not tardy, nor was he absent, and so the policy requiring him to notify his employer within eight hours or be deemed to have quit voluntarily, did not apply. Jones’s argument that he believed he would receive only a half-point in his record for leaving early that day is completely consistent with the plain language of the policy included within the handbook. Because the “voluntary quit” provision did not apply to Jones’s conduct on these facts, the ALJ erred in relying exclusively on it to conclude that Jones voluntarily had quit his job.
CONCLUSION
¶ 21. Because the ALJ relied solely on an inapplicable provision from the employee handbook in concluding that Jones voluntarily had quit his job, we find that MDES’s decision in denying Jones unemployment benefits was no.t supported by substantial evidence. Accordingly, we must reverse the judgment. of the Lee County Circuit Court, and remand this case for a proper determination of whether Jones is eligible for unemployment benefits.
If 22.--. REVERSED AND REMANDED.
LAMAR AND COLEMAN, JJ., CONCUR. KITCHENS, J, CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J.,’ AND RANDOLPH, P.J. MAXWELL, J., NOT PARTICIPATING.

. Mississippi Comm'n on Envtl. Quality v. Chickasaw Cty. Bd. of Supervisors, 621 So.2d 1211, 1215 (Miss.1993) (emphasis added).

. Mississippi Emp’t Sec. Comm’n v. PDN, Inc., 586 So.2d 838, 840 (Miss.1991) (emphasis added).

. Miss.Code Ann. § 71—5—513(A)(1)(a) (Rev. 2011).

. Mississippi Emp’t Sec. Comm’n v. Fortenberry, 193 So.2d 142, 143 (Miss.1966).

. See Broome v. Mississippi Emp’t Sec. Comm’n, 921 So.2d 334, 337 (Miss.2006); Johnson v. Mississippi Emp’t Sec. Comm’n, *1004 761 So.2d 861, 863 (Miss.2000); Huckabee v. Mississippi Emp’t Sec. Comm’n, 735 So.2d 390, 394 (Miss.1999); Wheeler v. Arriola, 408 So.2d 1381, 1384 (Miss.1982) (emphasis added).