848 So.2d 909 (2003)
Gary HEMBA, Appellant,
v.
MISSISSIPPI DEPARTMENT OF CORRECTIONS, Appellee.
No. 2002-CC-01153-COA.
Court of Appeals of Mississippi.
June 24, 2003.
*910 John R. Reeves and Christopher Paul Palmer, Attorneys for Appellant.
Office of the Attorney General by Jane L. Mapp, Jackson, Attorney for Appellee.
Before McMILLIN, C.J., THOMAS and CHANDLER, JJ.
*911 THOMAS, J., for the Court:
¶ 1. Gary Hemba was investigated for allegedly violating policies of the Mississippi Department of Corrections (MDOC) after an administrative hearing, the hearing officer recommended Hemba be suspended without pay for six weeks. Hemba appealed to the Employee Appeals Board, which reversed the decision of the MDOC. The MDOC appealed to the full Employee Appeals Board which affirmed the ruling of the hearing officer for the Employee Appeals Board. The MDOC appealed to the Circuit Court of Hinds County which reversed the decision of the Employee Appeals Board and reinstated Hemba's suspension. Aggrieved Hemba asserts the following:

I. THE CIRCUIT COURT ERRED IN REVERSING THE MISSISSIPPI EMPLOYEE APPEALS BOARD'S DECISION.

II. THE CIRCUIT COURT ERRED IN REFUSING TO AWARD ATTORNEY'S FEES TO THE APPELLANT.
Finding reversible error in the trial court's decision to reverse the decision of the Employee Appeals Board, we reverse and render.

FACTS
¶ 2. Gary Hemba began his employment with the Mississippi Department of Corrections (MDOC) on approximately March 2, 1987. Hemba was the state director of therapeutic recreation and general library services. His supervisor was stationed in MDOC's Central Office in Jackson, however, his physical office was at Central Mississippi Correctional Facility in Pearl, Mississippi. Mr. William Speed, Mr. Richard Gaston and Mr. Kelvin Griffin were under Hemba's direct supervision. Hemba's supervisor at the time was Ms. Brenda Blanks.
¶ 3. On April 10,2000, Warden Jackie Parker requested that Hemba be investigated. On that day, Mr. Johnny Covington, director of the internal audit division, approved the investigation. On April 14, 2000, Warden Jackie Parker requested that Hemba be reassigned pending the outcome of the investigation. On April 18, 2000, Hemba was reassigned temporarily. On June 15, 2000, Hemba was notified that an administrative review hearing was scheduled for July 7, 2000. He was accused of the following:
1. Bringing food in from outside the facility and making it available to inmates and providing his credit card to Richard Caston to use to purchase food for the inmates. This was a Group HI, # 11 and Group 11, # 1 charge.
2. Bringing female inmates into his office and closing the door without the benefit of another staff member to act as a witness. This was a Group LII, #11 and Group II, # 1 charge.
3. Bringing a handgun into his office inadvertently and then, upon realizing his error, taking the handgun immediately back to his vehicle. This was a Group III, # 8 and #11 charge.
4. Having inmates type letters of reprimand, a letter of counsel and having typed social security numbers on many employee time sheets. This was a Group III, # 15 charge.
¶ 4. An administrative review hearing was held on July 7, 2000. David Fondren, the MDOC hearing officer, recommended that Hemba be suspended for six work weeks without pay. He also recommended that the MDOC dismiss the charge involving Hemba's bringing female inmates into his office and closing the door without the benefit of another staff member because the MDOC had no policy that made such activity inappropriate. On August 4, 2000, *912 the MDOC suspended Hemba without pay for six workweeks effective August 21, 2000, to September 29, 2000. Although Mr. Fondren recommended that the "behind closed doors" charge be dismissed since nothing in MDOC policy made that behavior a violation subject to discipline, it was included in the suspension notice anyway. Hemba appealed to the Mississippi Employee Appeals Board. On September 28, 2000, Hemba was permanently reassigned.
¶ 5. On November 16, 2000, a hearing was held before Roosevelt Daniels II, Mississippi Employee Appeals Board hearing officer. At the beginning of the hearing, Joe Goff, the attorney for the MDOC, announced to Officer Daniels that the MDOC was withdrawing its allegation that Hemba did anything improper in bringing female inmates into his office and that the charge was inadvertently included in the suspension notice. In response to the allegation regarding the food, the following relevant facts were established through testimony at the hearing:
The audiotape recording of Hemba's interview with Jerry Dettman, integrity investigator for MDOC, reflected that Hemba did not admit that he had given his credit card to Richard Caston to buy food for inmates, although MDOC asserted that Hemba admitted the same. MDOC asserts that Hemba violated a certain MDOC policy 3.01 that prohibits providing food to inmates. Christopher Epps, deputy commissioner of MDOC, testified that inmates were allowed to consume food brought in by religious organizations that have Christmas celebrations. He also admitted that there was no written policy allowing this exception to MDOC's assertion that it was against regulations for inmates to consume "free world" food. He further testified that other MDOC employees commonly brought "free world" food into the correctional facility for the inmates to consume.
¶ 6. MDOC held a community services banquet for all community services directors across the state. Christopher Epps, deputy commissioner of MDOC, was present at the banquet, as well as all the MDOC community services directors. Tina Ladner, an employee of MDOC who at the time was supervised by Epps, called Hemba and said, "we fixed y'all plates of food for your staff and your inmates, if you'll send somebody up." Hemba sent inmates to pick up the food. Later, as Hemba passed the banquet, he saw a stream of inmates leaving with plates of food.
¶ 7. Hemba testified that he and his staff did not have a lunch hour and therefore had to bring their lunches to work. MDOC supplied a small refrigerator for the use of his department. Since the staff did not get to leave the facility for lunch, it was common for them to bring two or three days worth of lunch food and store it in the refrigerator for convenience. Inmates worked in Hemba's department for twelve hours each day. He and other witnesses testified that inmates would sometimes go into the refrigerator and consume leftover food. Hemba testified to conduct by other MDOC staff members involving food and inmates. Specifically, he reported seeing Warden Jackie Parker and other staff members lying on beds with inmates eating spaghetti. MDOC did not punish any of the offenders.
¶ 8. In response to the allegation regarding the gun, the following relevant facts were established at the hearing: Hemba admitted to inadvertently bringing a handgun into CMCF approximately three years prior to the his disciplinary hearing. He immediately secured the gun in his vehicle when he realized his mistake. Jerry Dettman *913 admitted bringing a handgun into a correctional facility and leaving it in a vehicle. Dettman admitted that an inmate found the handgun as well a cell phone. MDOC had knowledge of the mishap. MDOC did not discipline Dettman in any fashion.
¶ 9. Hearing Officer Daniels, exercising his discretion as the trier of fact, dismissed the gun charge as being too remote in time and because no disciplinary action had been brought within a reasonable time.
¶ 10. In response to the allegation regarding inmates typing certain documents, the following relevant facts were established at the hearing: Dettman testified that in practice, inmates have been allowed to handle some records within MDOC. Dettman admitted that the policy that purports to prohibit inmate contact with records in practice is applied to "sensitive records" of the type that would compromise the security of the facility. Aaron Jagers, Hemba's former supervisor, wrote a memorandum to Smitty Jordan, the American Corrections Association manager for the MDOC, affirming that Hemba's department was considered a non-sensitive area. Dettman testified that the MDOC had conflicting policies in dealing with inmates acting as clerical workers.
¶ 11. William Speed, an MDOC employee under Hemba's supervision, testified that the use of inmate clerks was institution wide. Speed also testified that he had never received any complaints about the use of inmate clerks.
¶ 12. Richard Caston, an MDOC employee under Hemba's supervision, testified that in approximately mid-March or early April, 2000, Captain Danny Triggs approached Caston and advised him that he "should inform two other employees that worked under Hemba that we shouldn't have inmates who type for us to type their initials on our memos when they type them, but not to inform Gary Hemba."
¶ 13. Caston testified that Associate Warden McClinton removed some inmates from a class Caston was teaching in order to have them type for her. Caston testified that during the pendency of the charges against Hemba for allowing inmates to type certain documents, Captain Patrick Marion reprimanded Caston for a certain policy violation and had the written reprimand typed by an inmate. Kevin Griffin, an MDOC employee under the supervision of Hemba, testified that around April 2000, Captain Danny Triggs came to Griffin's employment area and told him that "memos that were being typed up down at the gym were not supposed to be typed up by inmates, and that by initialing that, we were saying that we allowed the inmates to type it up. And he told us not to put our initials on them anymore." He then told Griffin to not tell Hemba.
¶ 14. Hemba testified that inmates have typed his documents for thirteen years. He testified that he did not have a secretary and was the only treatment director in the state without a secretary. He was also the only state treatment director with two separate departments under his supervision. Hemba testified that MDOC policy required him to hire qualified inmate workers to supplement staff members and that the inmate workers can possess clerical skills. Hemba testified that his former supervisor, Aaron Jagers, clarified that Hemba's work area is "non-sensitive." He told Hemba that "if they're not going to get you a secretary, you've got to have somebody do your work, because I expect you to put your product out." The memorandum Hemba was referring to was typed by an inmate. Hemba testified that he was given the authority to hire an inmate librarian by former MDOC Commissioner James Anderson. One of the requirements *914 was that the inmate librarian must maintain inmate records for the State. Hemba testified that the only time he had been told not to allow inmates to type documents was when Jack Donnelly told him to stop letting inmates type rule violation reports. Hemba complied with Mr. Donnelly's order and stopped allowing inmates to type rule violation reports.
¶ 15. After a full hearing on the merits, Officer Daniels rendered an opinion on December 11, 2000, in which he found that MDOC's actions were arbitrary and capricious, that Hemba's suspension from duty without pay should be reversed and all charges dismissed, and that Hemba should be reimbursed for the wages lost as a result of the suspension as well as the $50 filing fee. On December 14, 2000, MDOC appealed to the Mississippi Employee Appeals Board. On December 18, 2000, Officer Daniels rendered an amended opinion and order, superseding the December 11, 2001 order. The Full Board affirmed the decision of the hearing officer.
¶ 16. The MDOC appealed to the Hinds County Circuit Court by petition for writ of certiorari. Certiorari was granted. Hinds County Circuit Court reversed the decision of the Mississippi Employee Appeals Board, finding that its decision to affirm the hearing officer was arbitrary and capricious. This case sits before this Court in its fourth level of appeal.

I. DID THE CIRCUIT COURT ERR IN REVERSING THE MISSISSIPPI EMPLOYEE APPEALS BOARD'S DECISION?
¶ 17. Hemba contends that the decision of the MDOC hearing officer to suspend him for six weeks without pay was reached arbitrarily and capriciously and that the reversal by the Mississippi Appeals Board should stand. Hemba argues that the trial court erred in reversing the decision of the Appeals Board.
¶ 18. This Court's standard of review of an administrative agency's findings and decisions is well established. An agency's conclusions must remain undisturbed unless the agency's order (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional rights. Mississippi Dept. of Corrections v. Harris, 831 So.2d 1190, 1192-1193 (¶ 10) (Miss. App.2002); Lewis v. Mississippi Employment Sec. Comm'n, 767 So.2d 1029(¶ 9) (Miss.Ct.App.2000). A rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise. Id. Lastly, this Court must not reweigh the facts of the case or insert its judgment for that of the agency. Id. When an agency has taken disciplinary action against an employee, that person is entitled to review by the Employee Appeals Board under Miss.Code Ann. §§ 25-9-131 (Rev.1999). The proceedings before the Employee Appeals Board shall be de novo, and the employee shall be afforded all applicable safeguards of procedural due process. The Employee Appeals Board may modify the action of the department, agency or institution but may not increase the severity of such action on the employee. Miss. Code Ann. § 25-9-131 (Rev.1999). At the Appeals Board, the employee "shall have the burden of proving that the action taken against the employee is arbitrary, capricious, against the overwhelming weight of the evidence and merits the relief requested." S.P.B. Rule 10.40.19(B) (Rev.1999).
¶ 19. A circuit court sits as a reviewing court in appeals from decisions made by administrative agencies and, as such, its scope of review is limited to the findings of the agency. Walters v. Mississippi Dept. of Economic and Community Dev., 768 So.2d 893(¶ 8) (Miss.2000). In *915 other words, the lower court is not sitting as the initial fact-finder, but rather as an intermediate appellate court. Board on Law Enforcement Officer Standards and Training v. Rushing, 752 So.2d 1085(¶ 8) (Miss.Ct.App.1999) (citing Board of Law Enforcement Officers Standards and Training v. Butler, 672 So.2d 1196, 1199 (Miss.1996)). Consequently, the findings of the lower court are not entitled to the same deference that would be afforded to it were it sitting as a trial court. Id. "If the [agency's] decision is founded upon substantial evidence, then it is binding upon an appellate court, i.e., the Circuit Court and this Court." Wilkinson County Bd. Of Supervisors v. Quality Farms, Inc., 767 So.2d 1007, 1010(¶ 9) (Miss.2000); NCI Building Components v. Berry, 811 So.2d 321, 327(¶ 13) (Miss.Ct.App.2001).
¶ 20. The parameters of the circuit court when acting as a court of first appeal is clear. Unless the Mississippi Employee Appeals Board acted without any support of substantial evidence, in an arbitrary or capricious way, beyond the scope of power granted to the agency, or in violation of a person's constitutional rights then the decision reached by the agency must not be reversed. Lewis v. Mississippi Employment Sec. Comm'n, 767 So.2d 1029(¶ 9) (Miss.Ct.App.2000). The trial court must not substitute its judgement for the judgment of the agency. The Employee Appeals Board conducts a de novo review of appeals while the circuit court, acting as an appeals court under such circumstances, is limited to a more narrowed standard of review. NCI Building Components, 811 So.2d at 327(¶ 13). The review completed by the Employee Appeals Board was conducted de novo with a thorough record of findings and evidence presented. The credibility of the testimony was a matter to be judged by the Board and was a factor in its decision, the circuit court has no right to re-evaluate the credibility of the testimony.

II. DID THE CIRCUIT COURT ERR IN REFUSING TO AWARD ATTORNEY'S FEES TO THE APPELLANT?
¶ 21. Hemba argues that the circuit court erred in not awarding him attorney's fees, and he accuses the MDOC of filing a frivolous appeal.
¶ 22. Under Rule 11(b) of the Mississippi Rules of Civil Procedure, the court may award reasonable expenses and attorney's fees against a party or his attorney, or both, whose pleading or motion (1) is frivolous or (2) is filed for the purpose of harassment or delay. In reviewing whether the imposition of sanctions is warranted under Rule 11, this Court uses an abuse of discretion standard. January v. Barnes, 621 So.2d 915, 921 (Miss.1992).
¶ 23. The circuit court did not grant an award of attorney's fees against MDOC because it ruled in favor the MDOC. The question implicitly presented here is whether we should remand for the circuit court to make a determination of whether Hemba should be awarded attorney's fees now that we have ruled in his favor. We decline to do so because we hold that given the nature and course of these proceedings that, even though it has ultimately lost, MDOC's appeal was not subject to sanctions.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.