GRIFFIS, J.,
for the Court.
¶ 1. Andrew Nordstrom filed a claim for unemployment benefits with the Mississippi Employment Security Commission. The claims examiner held that Nordstrom was entitled to benefits because Tyson had failed to show Nordstrom was discharged for misconduct. The appeals referee reversed the decision of the claims examiner finding that Nordstrom failed to show good cause for leaving his employment. The board of review affirmed this decision, and Nordstrom appealed to the Circuit Court of Warren County. The circuit court reversed, finding that Nordstrom reasonably believed he was terminated, and therefore, he was entitled to benefits. Tyson now appeals asserting that the MESC decision was based on substantial evidence. Finding no error, we affirm.
FACTS
¶ 2. Andrew Nordstrom was employed as a maintenance technician by Tyson Farms in Vicksburg, Mississippi. In early August of 2001, Nordstrom hurt his shoulder. Tyson granted medical leave for Nordstrom to have surgery to repair his rotator cuff. He returned to work in late August and worked without incident until September 30, 2001. Nordstrom missed his scheduled work days on October 1, 2, 3, 8 and 9. On each of these days, Nordstrom called in and informed Tyson that he would be absent.
¶ 3. Nordstrom returned to work on October 10th. Concerned about his absences, Nordstrom went to the personnel office where he was given a “track sheet” that listed the total number of excused and unexcused absences. The track sheet indicated the five days he had just missed plus a previous absence equaled six unexcused absences: At the top of the track sheet, it stated that six unexcused absences meant that an employee was terminated. Believing he was discharged, Nordstrom never returned to work.
¶ 4. Nordstrom then filed a claim for benefits with the MESC. The claims examiner found that Nordstrom was not terminated for misconduct and granted benefits. Tyson appealed, arguing that Nordstrom had voluntarily quit his job. A telephonic hearing was set with the appeals referee.
¶ 5. Nordstrom testified that he did not voluntarily leave his job, but was “discharged.” He testified that he called in every day he was absent and told them his shoulder was “giving him problems” and that he was taking medication. Nord-strom testified that he understood that Tyson has a policy that if you are taking any kind of medication you cannot work.
¶ 6. Nordstrom testified that he went in October 10th, “ready to work.” When he went to the personnel office to check his absences, the track sheet indicated that he was terminated. When he could not find the plant manager, Nordstrom testified he asked the plant secretary if the track sheet “meant what he thought it did.” Nord-strom testified she told him “it meant exactly what it said. I was terminated.”
¶ 7. Nordstrom testified that he then went to his supervisor Jimmy Algood. Nordstrom testified that he told Algood that he was terminated. According to Nordstrom, Algood told him a medical excuse “might” remedy the problem. Nord-strom testified that he never brought in a *906 doctor’s excuse because he did not actually go see a doctor during the time he was absent. Nordstrom also stated that he was not aware that he had fifteen days to obtain a medical excuse, nor did the notice of termination inform him of this policy. Nordstrom testified that he believed he was terminated on October 10th.
¶ 8. Sharon Robinson, the plant personnel manager, was the only Tyson employee to testify. Robinson testified that Tyson has a company policy that when an employee has six absences that are unexcused and the employee does not have any type of documentation for it, the employee is terminated. However, if the employee provides a medical excuse in fifteen days, the employee will not be terminated. Tyson also considers a two days absence without calling in a voluntary termination. Robinson also testified that it was company policy for an employee to bring in their medication and the plant nurse would make a determination of whether they can work or not. A copy of Tyson’s employment policies was not provided in the record.
¶ 9. Robinson testified that Tyson’s records indicated that Nordstrom had called in for the days of October 1, 2, 8, 8, 9, and 10[1]; however, Tyson’s records disclosed the reason for the absence was personal. Robinson also testified that calling in would not have excused the absences and that Nordstrom was required to provide medical excuses for such absences. Robinson testified that Tyson believed Nord-strom resigned from his employment as a “two day no report” and that he was not discharged. She admitted that she had not personally spoken with Nordstrom nor was she “thoroughly aware” of his case because she had only “arrived [at Tyson] in July.”
¶ 10. The appeals referee determined that Nordstrom had failed to show “good cause for leaving his employment and benefits were terminated.” Nordstrom filed a notice of appeal with the board of review, which affirmed the ruling of the appeals referee. Nordstrom then appealed to the circuit court which reversed the opinion of the Commission and awarded benefits to Nordstrom. The circuit court based this ruling on Huckabee v. Miss. Employment. Sec. Comm’n, 735 So.2d 390, 396(¶ 22) (Miss.1998), which held that when an employee reasonably believes he is terminated, then the employee is entitled to benefits. Tyson has perfected this appeal asserting the circuit court exceeded its authority in reversing the MESC.
STANDARD OF REVIEW
¶ 11. Mississippi Code Annotated section 71-5-531(Rev.2000) governs the standard of review for appealing a MESC decision. Section 71-5-531, in pertinent part, provides: “[i]n any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.” Miss.Code Ann. § 71-5-531 (Rev.2000). “The Board’s findings of fact are conclusive if supported by substantial evidence and without fraud.” Hoerner Boxes, Inc. v. Miss. Employment Sec. Comm’n, 693 So.2d 1343, 1346-47 (Miss.1997) (citing Richardson v. Miss. Employment Sec. Comm’n, 593 So.2d 31, 34 (Miss.1992)).
*907 ANALYSIS

1. Whether the circuit court exceeded its authority in reversing the Mississippi Employment Security Commission’s decision to deny unemployment benefits to Andrew Nordstrom.

¶ 12. Tyson asserts that the decision of the MESC was based upon substantial evidence, and under the applicable standard of review, it was improper for the circuit court to overturn the decision. Tyson claims the circuit court exceeded its authority, and substituted its own judgment for that of the MESC.
¶ 13. To support this claim, Tyson relies on NCI Bldg. Components v. Berry, 811 So.2d 321 (Miss.Ct.App.2001). In Berry, Calvin Berry committed a costly error to the company and was disciplined for it. Id. at 324(¶4). On the same day, Berry asked his supervisor, Jimmy Thigpen, how many paid days of sick leave he had. Id. Berry learned he had two days available and told his supervisor he planned to used those days and would be out the next two days of work. Id. NCI’s company policy required all employees to call in to work if they are going to be out. Id. at 324(¶ 5). When Berry returned to work two days later, he asserted that a supervisor, Scottie Williams, fired him from his employment. Id. at 325(¶ 7). When Williams testified, he denied this, and claimed Berry told him he wanted to quit. Id. Williams testified he told Berry that if he wanted to leave, he needed to speak to his immediate supervisor, Thigpen, and arranged a meeting between them for 3:00 the same afternoon. Id. Several other NCI supervisors corroborated this testimony. Id.
¶ 14. Berry testified that he chose not to attend the meeting with Thigpen. Id. at 325(¶ 8). He also admitted that later the same day, another supervisor, Billy Taylor, spoke with him on the phone and assured Berry that he had not been terminated because Williams did not have the authority to take such action. Id. Berry testified that Taylor told him to come in and meet with Taylor and Thigpen in order to “iron everything out.” Id. Berry testified that Taylor told him they had no intention of letting him go. Id. Berry admitted he ignored this request and did not go in that afternoon to straighten things out with his immediate supervisors. Id.
¶ 15. Berry never reported back to work. Id. at 325(¶ 9). NCI’s termination papers stated that Berry had voluntarily quit his position without notice to his employer. Id. at 326(¶ 9). The MESC agreed with NCI and found Berry had abandoned his job without notice and was therefore not entitled to unemployment benefits. Id. Berry appealed and the circuit court reversed, finding that Berry was fired from his employment with NCI. Id. This Court reinstated the decision of the MESC finding that no direct evidence supported Berry’s claim other than his own testimony. Id. at 327 (¶ 15). Furthermore, NCI provided multiple witnesses to corroborate that Berry was not fired from his position at NCI, but rather, he quit his job by not returning to work. Id.
¶ 16. Tyson claims the facts in Berry are substantially similar. Tyson argues that Nordstrom’s assertion that he believed he was terminated is unsupported by the record. Tyson claims Nordstrom’s belief is based on the information given to him by the plant secretary who, like the supervisor in Berry, did not have the authority to fire Nordstrom. They also argue that Nordstrom’s supervisor, Algood, told him the problem could be remedied by providing medical documentation of his absences. Tyson claims this is analogous to the supervisors in Berry informing Berry that he was not terminated.
*908 ¶ 17. This Court finds that the facts surrounding Nordstrom’s case are substantially different from the facts in Berry. First, by his own testimony, Nordstrom’s belief that he was terminated was based on the wording of a Tyson document. The plant secretary thereafter reinforced what Nordstrom already believed, that he was terminated. Second, when Nordstrom told his immediate supervisor, Algood, that he was terminated, Algood did nothing. Al-good’s only response was to tell Nord-strom that a medical excuse “might” clear up the problem. Algood never informed Nordstrom that he would not be terminated if he provided medical documentation. Finally, in Berry, this Court based its decision on the fact that NCI provided several corroborating witnesses to support its position. Tyson’s only witness was the plant personnel manager, Robinson, who had no first hand knowledge of the events nor was she employed by Tyson when the incident took place.
¶ 18. This case is more in line with Huckabee v. Miss. Employment Sec. Comm’n, 735 So.2d 390 (Miss.1999). In Huckabee, Barbara Huckabee was employed as a cashier at Lyman’s. Id. at 392(¶ 4). According to Huckabee, on September 28, 1995, approximately five minutes before her shift ended, she spoke with her manager at Lyman’s, Judy Saucier, about her employment conditions. Id. at 392(¶ 5). Huckabee was concerned about being scheduled to work as a cook full-time, which she felt was a two-person job. Id. Saucier asked Huckabee if she was looking for another job. Id. Huckabee responded that she would be looking for another job because of the burden that had been placed on her, but she would continue working as long as she possibly could. Id. Saucier then stated that Lyman’s would have to find someone else, and Huckabee assured Saucier that she would give her two weeks’ notice if she did leave. Id. Huckabee asked if Saucier was trying to get rid of her. Id. Huckabee stated that Saucier giggled, threw her hands in the air, and stated, “I’m hiring someone else.” Id. Huckabee interpreted this to mean that she had been terminated. Id.
¶ 19. The president of Lyman’s, Robert Dean Hyde, testified as the employer’s representative. Id. at 393(¶ 6). He stated that he was “basically” in charge of all the hiring and the firing at Lyman’s. Id. He testified that Saucier had no authority to hire and fire employees. Id. Hyde testified that he had no knowledge of what transpired between Huckabee and Saucier, but Huckabee was under no threat of discharge at anytime. Id.
¶ 20. The ME SC found that Huckabee was not discharged, but that she left her employment voluntarily and had failed to show good cause for leaving her employment. The circuit court affirmed this decision. The Mississippi Supreme Court determined that the proper question for the court was whether it was reasonable for Huckabee to interpret her supervisor’s statement to mean her employment had been terminated. Id. at 396(¶22). The court held that the statement, “I’m hiring someone else,” is language a reasonable person would interpret as a discharge. Id. The supreme court reversed and remanded for a determination of the amount of compensation owed Huckabee. Id.
¶ 21. This Court, therefore, must ask whether it was reasonable for Nordstrom to believe he had been terminated on October 10th. We find that it was. Nord-strom was given a Tyson document — the track sheet — which documented all his absences. He was aware of Tyson’s policy that after six unexcused absences, an employee is terminated. The track sheet documented six unexcused absences and clearly indicated that “[tjermination occurs *909 when you have attained six occurrences.” Nordstrom believed he was terminated. The plant secretary confirmed Nord-strom’s belief. Algood, his supervisor, did nothing to assuage Nordstrom’s belief, and only suggested that a medical excuse “might” straighten out the problem.
¶ 22. Under these circumstances, we find that a reasonable person would believe they were terminated on October 10th. Nordstrom’s subsequent failure to report to work on October 13th and 14th, cannot be classified as “misconduct” in view of the prior notice of termination he received on October 10th. See Wheeler v. Amóla, 408 So.2d 1381, 1383 (Miss.1982).
¶ 23. Accordingly, we find that the ruling of the circuit court was without error, and we affirm.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ„ CONCUR.

. While Tyson’s records may indicate that Nordstrom called in sick on October 10th, the trial record clearly disputes this. The track sheet given to Nordstrom is dated October 10th, so there is no doubt he was at work on this date.