RUSSELL, J.,
for the Court:
¶ 1. Sonya Patterson appeals the Circuit Court of Alcorn County’s judgment affirming the decision of the Mississippi Department of Employment Security (MDES) Board of Review denying unemployment benefits. Patterson asserts that the Al-corn County Circuit Court erred by finding there was substantial evidence to conclude she violated her employer’s policy by committing misconduct connected with her work. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. From June 11, 2007, to August 20, 2010, Patterson was employed with Direct General Insurance Agency (Direct) as an agent manager.
¶ 3. Patterson sent an email to her supervisor, Noel Coward on August 11, 2010. In the email, Patterson stated that Rides-to-Go (Rides) was sending all of its white customers to another insurance company and only African-American customers to Direct.
¶ 4. On August 12, 2010, a telephone conversation occurred between Patterson and Allison Albarracin, an employee for Rides. Some of the facts of this conversation are disputed. However, it is undisputed that following the conversation, Al-barracin called Coward complaining about Patterson’s accusations of racism, and asked Coward to investigate.
*721 ¶ 5. Following Coward’s investigation, Patterson was terminated on August 20, 2012, for violating the standard-of-conduct policy after she allegedly made a racial remark to one of Direct’s vendors. She also made misrepresentations during the investigation.
¶ 6. After her termination, Patterson filed for unemployment benefits, which were granted by the claims examiner. The examiner found Direct had failed to prove that Patterson was discharged for misconduct. Direct appealed to the MDES.
¶ 7. After a telephonic hearing, the administrative law judge (ALJ) found that Patterson was discharged for willfully and wantonly violating the employer’s policy for rudeness, unprofessional and unethical conduct, asking a vendor or a company referring customers a racial question, and dishonesty during the investigation. Thus, the ALJ found that Patterson had been discharged for misconduct relating to her work and was disqualified from receiving unemployment benefits.
¶ 8. Patterson then appealed to the MDES Board of Review, which affirmed the ALJ’s decision. Patterson again appealed to the Circuit Court of Alcorn County, which affirmed the Board of Review’s decision. Patterson now appeals to this Court.
STANDARD OF REVIEW
¶ 9. Our standard of review as applied to appeals from the decisions of the MDES Board of Review is limited. Mississippi Code Annotated section 71-5-531 (Rev. 2011) states: “In any judicial proceedings under this section, the findings of the [Bjoard of [Rjeview as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.”
¶ 10. The Mississippi Supreme Court has previously stated:
Where there is the required substantial evidence, this Court has no authority to reverse the circuit court’s affirmance of the decision of the Board of Review. The board’s findings of fact are conclusive if supported by substantial evidence and without fraud. Therefore, [the appellate court] must not reweigh the facts of the case or insert its judgment for that of the agency.
Broome v. Miss. Employment. Sec. Comm’n, 921 So.2d 334, 337 (¶ 12) (Miss.2006) (internal citations and quotations omitted).
DISCUSSION
¶ 11. The question presented is whether there was substantial evidence to support the disqualification of Patterson from unemployment benefits because she committed disqualifying misconduct pursuant to Mississippi Code Annotated section 71-5-513(A)(l)(b) (Rev.2010) by willfully and wantonly violating her employer’s policy prohibiting rude and unprofessional conduct.
¶ 12. Although Patterson asserts that Direct failed to provide substantial evidence that her termination was due to her misconduct, she fails to provide or cite any authority in support of her argument. Failure to cite any authority is a procedural bar, and this Court is under no obligation to consider the assignment of error. Powell v. Cohen Realty, Inc., 803 So.2d 1186,1190 (¶ 5) (Miss.Ct.App.1999).
¶ 13. Notwithstanding the procedural bar, we find this issue to be without merit. Section 71-5-513(A)(l)(b) provides that an individual may be disqualified from receiving unemployment benefits if “he was discharged for misconduct connected with his work.” In misconduct *722 cases, the employer bears the burden of showing by “substantial, clear, and convincing evidence that the former employee’s conduct warrants disqualification from eligibility [for] benefits.” Shavers v. Miss. Employment Sec. Comm’n, 763 So.2d 183, 185 (¶ 8) (Miss.2000). “Misconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer’s legitimate interests.” Id. “Something more than mere negligence must be shown.... ” Id.
¶ 14. Direct alleges that Patterson violated an employee policy regarding the standard of conduct. The Mississippi Supreme Court has held that an employee is disqualified from receiving unemployment benefits where the employee violated an employer’s policy or otherwise failed to meet a required condition of employment. Richardson v. Miss. Employment Sec. Comm’n, 593 So.2d 31, 33 (Miss.1992).
¶ 15. Direct’s employment policy lists unprofessional conduct, such as not telling the truth or being dishonest in an investigation, as grounds for termination. The standards of behavior prohibit the use of any language or other conduct that conflicts with the company’s goals, including harassment or rudeness directed towards vendors and dishonesty.
¶ 16. Coward testified that he received a call from Albarracin, who was upset by Patterson’s accusations of racism. Coward initiated an investigation into the incident.
¶ 17. Coward testified that he spoke to Patterson, who admitted that she had called Albarracin to ask about the pattern she noticed of Rides sending only African-American customers to Direct and white customers to Alpha. Coward stated he told Patterson that such a question was unprofessional. When he asked Patterson to apologize, she refused and stated that if she did apologize, Coward would have to bail her out of jail.
¶ 18. Coward testified that when he asked Patterson to write out her side of the story, she changed her story and stated it was Albarracin who actually brought up the alleged racial pattern. According to Coward, Patterson repeatedly denied making the statement to Albarracin.
¶ 19. Coward also testified that one of Patterson’s witnesses informed him that he did not overhear the conversation between Patterson and Albarracin as alleged by Patterson because he was with a customer. Coward concluded his investigation and decided to terminate Patterson based on her unprofessional conduct and rudeness, as well as for giving false statements during the investigation.
¶ 20. Patterson argues that the circuit court did not have a clear and complete statement of the facts concerning her dispute with MDES and Direct, and therefore, could not deliver a decision in her favor. She also argues that she committed no misconduct and that Direct submitted no corroborating testimony, either written or verbal, to substantiate the allegations made against her by Albarracin. Patterson also claims that during the telephonic hearing she was not asked any questions regarding her claim or allowed to make a statement or present evidence to support her claim.
¶ 21. However, the record reflects otherwise. Patterson was given ample opportunity to present her side of the case. Patterson provided the statements of two witnesses who she alleged were in the room during her telephone conversation with Albarracin. These witnesses wrote that they did not hear Patterson say anything racial. Patterson also testified that these witnesses could hear Albarracin screaming loudly on the phone. Patterson’s witnesses did not testify, and the *723 ALJ explained to Patterson multiple times that the witnesses’ statements would not be admitted into evidence because the ALJ needed to hear the testimony of Patterson’s witnesses and allow them to be cross-examined.
¶22. Patterson argues that she called Rides to inquire as to who Direct’s top competitor was. Patterson stated that Al-barracin wanted to know why Patterson was asking. Patterson answered that she was merely curious. According to Patterson, Albarracin started cursing very loudly, stating: “We would send y’all customers too if y’all didn’t put all that extra sh* * on people’s policies. Alpha pays us for referrals[,] so why can’t y’all?”
¶ 23. Patterson confirmed that she refused when asked by Coward to apologize. Patterson also testified that she told Coward it was Albarracin who had been offensive and had used vulgar language.
¶ 24. Our supreme court has stated that “the meaning of the term ‘misconduct,’ as used in the unemployment compensation statute, was conduct evincing such wilful and wanton disregard of the employer’s interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee.” Wheeler v. Arriola, 408 So.2d 1881, 1383 (Miss.1982). Patterson’s conduct is in line with our supreme court’s definition of “misconduct” found in Wheeler. Id.
¶ 25. The Board of Review is the fact-finder. We must not reweigh the evidence, but determine if the decision is supported by substantial evidence. As the fact-finder, the Board of Review weighs the credibility given to the testimony and the evidence.
¶ 26. The ALJ and the Board of Review found that Patterson was discharged due to her behavior towards the vendor and Albarracin in addition to her untruthfulness during the investigation into the incident. The ALJ and the Board of Review found that there was ample evidence to support the finding that Patterson willfully and wantonly failed to adhere to the company’s policy regarding professional conduct. They also found the evidence substantiated a finding against Patterson that her misconduct was connected with her work. We agree that when viewed together, the decision of the ALJ and the Board of Review is supported by substantial evidence.
¶ 27. Finding that there was substantial evidence that Patterson committed disqualifying misconduct pursuant to section 71 — 5—513(A)(1)(b), we affirm.
¶ 28. THE JUDGMENT OF THE AL-CORN COUNTY CIRCUIT COURT AFFIRMING THE DENIAL OF BENEFITS IS AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR.