BARNES, J.,
for the Court:
¶ 1. Brenda Jackson was employed as a substitute teacher for the Jackson Public Schools Board of Trustees (JPS) from February 7, 2011, to May 27, 2011.[1] Jackson moved to Texas on June 1, 2011, to pursue other employment opportunities.
¶ 2. On June 2, 2011, Jackson filed a claim for unemployment benefits with the Mississippi Department of Employment Security (MDES). When it was discovered that Jackson had voluntarily relocated to Texas, MDES disqualified her from receiving any benefits. Additionally, MDES found that Jackson had received an overpayment of $705 for the period of June 11, 2011, to June 25, 2011.
¶ 3. Jackson appealed the denial of benefits. After a hearing on September 8, 2011, the administrative law judge (ALJ) concluded that since Jackson voluntarily left her employment with JPS, she was not entitled to unemployment benefits. He also found Jackson liable for the $705 in unemployment benefits she had received, including interest of one percent per month on the unpaid balance. Aggrieved, Jackson appealed the ALJ’s decision to the MDES Board of Review (Board), which affirmed the findings.
¶ 4. Jackson subsequently appealed the Board’s findings to the Hinds County Circuit Court. On March 12, 2012, the circuit court affirmed the Board’s decision. Jackson now appeals to this Court, and finding no error, we affirm the denial of unemployment benefits.
STANDARD OF REVIEW
¶ 5. Our standard of review of the decision of an administrative agency is limited to a determination of whether the Board’s order: “(1) was unsupported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.” Moran Haul *381 ing Inc. v. Dep’t of Fin. & Admin., 105 So.3d 1126, 1128 (¶8) (Miss.Ct.App.2012) (quoting Tillmon v. Miss. State Dep’t of Health, 749 So.2d 1017, 1021 (¶ 15) (Miss.1999)).
[Furthermore, w]here there is the required substantial evidence, this Court has no authority to reverse the circuit court’s affirmance of the decision of the Board of Review. The [B]oard’s findings of fact are conclusive if supported by substantial evidence and without fraud. Therefore, the appellate court must not reweigh the facts of the case or insert its judgment for that of the agency-
Patterson v. Miss. Dep’t of Emp’t Sec., 95 So.3d 719, 721 (1110) (Miss.Ct.App.2012) (quoting Broome v. Miss. Emp’t Sec. Comm’n, 921 So.2d 334, 337 (¶ 12) (Miss.2006)).
DISCUSSION
¶ 6. Jackson argues that she did not voluntarily quit work, but rather that she was told by JPS there was no work available during the last two weeks of May. She also claims that she failed to receive notification of the required summer training for substitute teachers, which was mandatory in order to continue employment with JPS the next academic year. Jackson said that the notice of training was mailed to her former Mississippi address, even though JPS knew she no longer resided there.
¶ 7. Mississippi Code Annotated section 71-5-513(A)(l)(a) (Rev.2011) states that a person shall be disqualified from receiving benefits for the time he or she “left work voluntarily without good cause, if so found by the department[.]” The statute also says that “marital, filial and domestic circumstances and obligations shall not be deemed good cause within the meaning of this subsection.” Id. “The question of whether an employee voluntarily leaves his employment or is terminated is a question of fact to be determined by the MDES.” Waldrwp v. Miss. Emp’t Sec. Comm’n, 951 So.2d 597, 599 (¶ 9) (Miss.Ct.App.2007) (citing Huckabee v. Miss. Emp’t Sec. Comm’n, 735 So.2d 390, 394 (¶ 14) (Miss.1999)).
¶ 8. Jackson claims that the testimony provided by JPS at the hearing before the ALJ was false, and she has submitted additional documentation that she asserts will support her claim. However, we must deny Jackson’s request to review and rely upon the documentation provided with her appeal, as it was not part of the record below. “It is well settled that a reviewing court cannot consider matters which do not appear in the record and must limit itself to the facts that do appear in the record.” City of Jackson v. Perry, 764 So.2d 373, 383 (¶49) (Miss.2000). We cannot base our decision on information not provided to the ALJ or the Board for consideration.
¶ 9. We determine that the ALJ’s findings are supported by the evidence. The ALJ concluded that Jackson “had a reasonable assurance of returning to work for the [JPS] System in the next successive academic term and chose to leave her employment to relocate to Texas.” Thus, Jackson was disqualified from benefits and “obligated to repay the assessed overpayment plus any interest that may accrue on the unpaid balance.” During the hearing, Jackson acknowledged: “[JPS] didn’t tell me I have a job. They didn’t tell me I was ... fired. They didn’t tell me I couldn’t work.” Jackson explained that she needed to work during the summer and that she moved to Texas to find a job. Jackson admitted she permanently relocated to Texas on June 1, 2011, because she thought she had a viable job prospect when she moved to Texas.
*382 So I came [to Texas] to work with the temporary agency as I always have in the past .... I came here to work at that company. Then when I got here [ (Texas) ], I realized that ... they had downsized and a lot of, you know, jobs w[ere not] comin[g] through them anymore, and then I started applyin[g] for jobs other places. So yes[,] I came here with a plan.
Jackson notes in her brief:
Because JPS[’s] substitute office pays once at the end of the month, I would still have to work [thirty] days before my first payroll check. That means I would become five or so months behind on my mortgage in addition to deficits already in place. Again, I relocated to keep from losing my home to foreclosure and because I would not have any income for four or five months.
Jackson also testified that she transferred colleges (from Jackson State University to the University of Southern Mississippi), so she could continue her education through online courses from Texas. Therefore, we find there is sufficient evidence that Jackson left Mississippi and relocated on her own volition.
¶ 10. Jackson also claims on appeal that, had she received notice of the mandatory workshop and known that she had a job in the fall, she would have “done thing[s] differently!,] even after [she] relocated.” A JPS employee, JoAnn Shelton, testified at the hearing that Jackson was “sent a letter to come to the [mandatory] workshop in June”; and that Jackson called her, stating she had moved out of state and .could not attend.[2] Shelton noted: “When someone calls to say they’re relocating, that’s a verbal resignation.” Shelton also stated that substitute teachers are informed when they are hired regarding the mandatory workshop and the necessity to attend in order to be eligible as a substitute teacher for the next school year. On appeal, Jackson disputes Shelton’s testimony; however, Jackson was allowed to question Shelton regarding her testimony at the hearing and failed to provide any evidence that Shelton had committed perjury. Furthermore, Jackson clearly stated at the hearing that she could not stay in Mississippi due to financial reasons and was unable to attend the mandatory training.
I had relocated out here to Dallas when the letter, whatever letter was sent to me in June. And whenever ... you have your mail re-routed, it takes up to [two] weeks, sometimes [three] weeks to get your mail[,] so I never received the letter. [If it] came, it didn’t come in time enough for me to ... do the workshop because at that time[,] I had relocated [on] May 31st. June 1st, I was out here already!,] so I could not attend a workshop that I had already relocated from.... [T]he other thing is [JPS] said that, they verbally said it, they said, you know, to attend a workshop and[,] if I had stayed in Jackson and gone to school at Jackson State, you know, I would have attended the workshop. I would have gone through the routine to do that, but again I couldn’t wait until September to get paid[.] ... [S]o that’s the reason why I relocated ... to the Dallas area [;] you know about the workshop, that’s the reason why it didn’t work for me.
(Emphasis added). Thus, it is evident Jackson was aware of the required workshop and its necessity to retain her job as a substitute teacher for the upcoming fall session. Yet she chose to leave Mississip *383 pi for financial reasons and not attend the workshop. Consequently, we find Jackson’s assertion that JPS failed to notify her of the workshop, causing her to lose gainful employment with JPS the following school year, lacks merit.
¶ 11. Accordingly, we find that it was not arbitrary or capricious for the ALJ and Board to determine that Jackson voluntarily left her employment with JPS, and the decision to deny Jackson benefits was supported by substantial evidence.
¶ 12. We also uphold the agency’s finding that Jackson is obligated to repay the assessed overpayment with interest. Jackson voluntarily relocated to Texas on June 1, 2011, but she was paid benefits for the two-week period following her departure. Mississippi Code Annotated section 71-5-19(4)(b) (Rev.2011) states that any person found to have received an overpayment of benefits “shall be liable to repay to the department for the Unemployment Compensation Fund a sum equal to the overpayment amount so received by him[.]”
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Jackson’s lást day of work was May 13, 2011, but it is undisputed that she contacted JPS for two weeks after that date to determine if work was available.

. While Jackson claims she has never received a letter regarding the workshop, the record supports a finding that she had notice of the training.